## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

| | | |
|---|---|---|
| SALVATORE MAITA, | : | |
| Plaintiff, | : | |
| -against- | : | **VERIFIED COMPLAINT** |
| FIRE DEPARTMENT OF THE CITY OF NEW YORK and CITY OF NEW YORK, | : | Case No. 24-cv-6559 |
| Defendants. | : | **JURY TRIAL DEMANDED** |

– – – – – – – – – – – – – – – – – – – – – – – – – – – –X

Plaintiff, SALVATORE MAITA, through Counsel, states for his Verified Complaint as follows:

### PRELIMINARY STATEMENT

1. This case starkly illuminates the callous disregard for civil liberties exhibited by the Fire Department of the City of New York ("FDNY") and the City of New York ("the City") in their treatment of Salvatore Maita, a dedicated Firefighter stationed at Ladder 41.

2. The City implemented a COVID-19 Vaccine Mandate for all municipal employees, including Mr. Maita, which provided for religious accommodations. Mr. Maita is a devout Roman Catholic who adheres to the original teachings of the Council of Trent, which precede the Second Vatican Council of 1962, and is steadfast in his religious beliefs opposing the use of aborted fetal cell lines in COVID-19 vaccines. As such, Mr. Maita duly petitioned for a reasonable accommodation.

3. Outrageously, the FDNY summarily dismissed Mr. Maita's sincere request without genuine consideration, dispatching a boilerplate and perfunctory denial letter with a vague reference to "potential undue hardship".

1

4.   While Mr. Maita's request for a religious accommodation was callously denied, the FDNY readily granted accommodations to other employees facing the same vaccine mandate, allowing those accommodated to submit weekly PCR testing in lieu of vaccination. Given that even active-duty firefighters were accommodated with the option of weekly testing, the FDNY's denial of Mr. Maita's accommodation request proves arbitrary and discriminatory.

5.   The City's policies on religious accommodations are fundamentally biased, displaying religious animus against Roman Catholics, and rejecting individual religious beliefs, particularly those related to abortion, simply because they disagree with them. These policies exhibit a troubling bias by prioritizing the views of religious leaders over the sincere beliefs of individual adherents. By favoring certain preferred organized and established religions, like Christian Scientists and Jehovah's Witnesses, and denying requests where religious leaders have publicly supported the vaccine, the City effectively disregards the personal and deeply held convictions of individuals like Mr. Maita. This approach discriminates against those whose personal religious beliefs diverge from the public statements of their religious authorities, thereby undermining the principle of individual religious freedom. Such policies create a hierarchy of religious validity, where only certain interpretations and expressions of faith are deemed acceptable, marginalizing those who hold different, yet equally sincere, beliefs. These policies not only infringe upon Mr. Maita's right to freely exercise his religion but also establishes a preferential treatment of certain religious views over others, contrary to the Establishment Clause.

6.   And in a display of bureaucratic obstinacy, the Defendants refused to reinstate Mr. Maita to his employment position even after the City lifted its COVID-19 Vaccine Mandate.

7.   The consequences of the Defendants' egregious actions extend far beyond mere employment termination; they constitute a profound infringement upon Mr. Maita's religious

freedoms and civil rights, leaving an indelible mark on his professional and personal well-being. This egregious violation of Mr. Maita's rights underscores a troubling trend of unchecked executive overreach, wherein governmental bodies wield their authority without regard for the fundamental freedoms and protections provided by our Constitution, as well as local and state legislatures.

8. This case is a poignant reminder of the imperative to safeguard individual liberties—particularly in times of crisis. The words of Supreme Court Justice Gorsuch resonate with newfound urgency, underscoring the peril of sacrificing cherished freedoms at the altar of perceived safety:

> Doubtless, many lessons can be learned from this chapter in our history, and hopefully serious efforts will be made to study it. One lesson might be this: Fear and the desire for safety are powerful forces. They can lead to a clamor for action—almost any action—as long as someone does something to address a perceived threat. A leader or an expert who claims he can fix everything, if only we do exactly as he says, can prove an irresistible force. We do not need to confront a bayonet, we need only a nudge, before we willingly abandon the nicety of requiring laws to be adopted by our legislative representatives and accept rule by decree. Along the way, we will accede to the loss of many cherished civil liberties—the right to worship freely, to debate public policy without censorship, to gather with friends and family, or simply to leave our homes. We may even cheer on those who ask us to disregard our normal lawmaking processes and forfeit our personal freedoms. Of course, this is no new story. Even the ancients warned that democracies can degenerate toward autocracy in the face of fear.

*Arizona v Mayorkas*, 143 S Ct 1312, 1315 (2023) (Statement of J. Gorsuch).

## PARTIES

9. Plaintiff is an individual who resides in the Bronx, New York.

10. Plaintiff was employed by the Defendants FIRE DEPARTMENT OF THE CITY OF NEW YORK ("FDNY") and CITY OF NEW YORK ("City") as a Firefighter. Plaintiff worked for the FDNY from March 7, 2004, until he was wrongfully terminated on February 11, 2022.

3

11. At all relevant times, Plaintiff was an employee of the FDNY and City within the meaning of the NYSHRL and NYCHRL.

12. The Defendant NEW YORK CITY FIRE DEPARTMENT is an agency of THE CITY OF NEW YORK. THE NEW YORK CITY FIRE DEPARTMENT's principal office is located at 9 Metrotech Center, Brooklyn, New York 11201

13. Defendant CITY OF NEW YORK is a municipality organized and existing under the laws of New York State. The City of New York was and is responsible for the policy, practice, supervision, and conduct of its Officers and Agencies at all relevant times hereto. The City of New York's principal office is located at 1 Centre Street, New York NY 10007.

14. At all times herein mentioned, Defendants have been an "employer" as defined by the NYSHRL (N.Y. Exec. Law § 292(5)) and the NYCHRL (N,Y.C. Admin. Code § 8-102).

15. At all times herein mentioned, Defendants employed no fewer than fifteen (15) persons.

## JURISDICTION AND VENUE

16. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. Additionally, Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367 to hear claims so related under the New York State Human Rights Law and the New York City Human Rights Law.

17. Venue is proper in this district under 28 U.S.C. §1391(b) because Defendant maintains a principal place of business within this District and a substantial part of the events giving rise to the cause of action arose here.

## STATEMENT OF FACTS

18.      Plaintiff, Salvatore Maita, (hereinafter "Plaintiff" or "Maita") was employed as a Firefighter for the FDNY since March 7, 2004.

4

19.     Plaintiff was stationed at Ladder 41, located at 1843 White Plains Rd, Bronx, NY 10462.

20.     Plaintiff is a Roman Catholic who adheres to the original teachings of the Catholic Church, which precede the Second Vatican Council of 1962. Plaintiff believes that the liturgical changes made at that time eroded faith in the real presence of Jesus Christ in the Eucharist and attempted to subserviate the Catholic Church among other Christian denominations. Plaintiff is not in communion with Pope Francis because Plaintiff conforms to the teachings of the Council of Trent.

21.     Plaintiff attends a Traditional Latin Mass, called a Tridentine Mass, between one and three times per week. In addition, Plaintiff prays rosary daily and attends the Holy Hour during the week. Plaintiff attends mass at Annunciation Church in Crestwood, New York, Immaculate Conception Church in Sleepy Hollow, New York, and the Parish of St. Theresa of the Infant Jesus in Briarcliff Manor, New York.

22.     Plaintiff refuses to receive the COVID-19 vaccine in particular because all available COVID-19 vaccine lines were tested, researched, manufactured, produced, or otherwise developed using aborted fetal cell lines. Plaintiff believes that life is a gift from God which begins at conception. Accordingly, Plaintiff and his wife reject the use of contraceptives because Plaintiff believes that the creation of life is God's domain, and that the use of manmade products which interfere in God's creation of life is a sin. Plaintiff further believes that abortion is grave sin which Plaintiff refuses to support in any way. Plaintiff believes that to receive the COVID-19 vaccine would make him complicit in the evil sin of abortion.

23.    Plaintiff discussed his opposition to receiving the COVID-19 vaccine with his spiritual advisor Father Paul Waddel, a priest in Briar Cliffe Manor, at St. Theresa's. Father Waddel understood Plaintiff's position and supported Plaintiff's religious objection.

24.    Plaintiff refused to receive the COVID-19 vaccination based upon his sincerely held religious beliefs.

25.    Vaccination was not a condition of employment when Plaintiff was hired by the FDNY in 2004.

26.    Plaintiff's employment record with the FDNY was without blemish.

27.    At no time during Plaintiff's employment with the FDNY was he ever suspended or found to be insubordinate.

28.    In early 2020, COVID-19 began circulating in New York City.

29.    In March of 2020, the Governor of New York State issued an executive order closing "non-essential" businesses.

30.    Plaintiff worked throughout the COVID-19 pandemic, in person, for over eighteen months.

31.    On October 20, 2021, the New York City Commissioner of Health and Mental Hygiene issued the City Worker COVID-19 Vaccine Mandate, an Order requiring all City Workers to receive a COVID-19 vaccine by October 29, 2021 (hereinafter "Vaccine Mandate").[1] Subsection eight of the Health Commissioner's Order provides for reasonable accommodations.

---

[1] Health Commissioner's Order, accessible at https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-city-employees.pdf

32.    The Defendants FDNY and the City did not collectively bargain with Plaintiff's Union, the Uniformed Firefighters Association, before implementing or enforcing the Vaccine Mandate

33.    The Vaccine Mandate provided for reasonable accommodations on its face pursuant to section eight of the Order of the New York City Commissioner of Health and Mental Hygiene.

34.    During this time, the City had mutual aid agreements with outside municipalities that did not have vaccination requirements and/or provided first responders to work unvaccinated with reasonable accommodation.

35.    The City also had volunteer Fire Departments who were not subject to the Vaccine Mandate or any vaccination requirement. The volunteer firefighters and personnel were permitted to work unvaccinated.

36.    The City promulgated a written policy regarding the implementation of the Vaccine Mandate and the reasonable accommodation process.

37.    This policy, entitled "FAQ on New York City Employees Vaccine Mandate" provided that "[a] sincerely held religious, moral, or ethical belief may be a basis for a religious accommodation."

38.    This policy also provided that the alternative to vaccination allowed which would not cause an undue hardship if an employee is granted a reasonable accommodation would be submission of a weekly negative test result.

39.    This policy also provided for medical accommodations. Temporary medical accommodations were provided for employees within the isolation period after COVID-19 infection and employees within ninety days of antibody treatment. Permanent medical

7

accommodations were provided for employees who were unable to mount an immune response to COVID-19.

40.     This policy also provided that employees who requested reasonable accommodations would continue working and submitting weekly negative test results while their accommodation request was pending.

41.     Due to administrative constraints and backlog, thousands of City employees, including many FDNY employees (and FDNY firefighters), continued working unvaccinated for many months after the Vaccine Mandate was implemented. Some of them were never placed on LWOP nor were they ever terminated, and instead continued to submit to weekly testing until the Vaccine Mandate was eventually lifted.

42.     Accommodation requests related to the COVID-19 Vaccine Mandate were handled by attorneys from the FDNY General Law Unit. Prior to the implementation of the COVID-19 Vaccine Mandate, accommodation requests fell under the purview of the attorneys in the FDNY's Equal Employment Opportunity Office. Notably, the attorneys in the General Law Unit had no previous involvement in processing accommodation requests before the introduction of the COVID-19 Vaccine Mandate.

43.     On November 1, 2021, Plaintiff was placed on Leave Without Pay ("LWOP") due to noncompliance with the COVID-19 Vaccine Mandate.

44.     On November 5, 2021, Plaintiff filed a request for religious accommodation based on his sincerely held religious beliefs, which included a form entitled "Request for a Reasonable Accommodation for Religious Observances, Practices, or Beliefs" provided by the FDNY.

45.     On Plaintiff's religious accommodation request form, he identified his religion as Roman Catholic.

8

46.     On Plaintiff's religious accommodation request form, he identified his work position as a Firefighter and his work location at Ladder 41.

47.     On the form, Plaintiff requested the alternative accommodation of weekly PCR testing.

48.     Plaintiff articulated the basis for his religious accommodation request in his request form, citing his strong opposition to the use of stem cells and abortion-related products in the development and production of COVID-19 vaccines.

49.     On December 1, 2021, FDNY denied Plaintiff's request for a religious accommodation to the Vaccine Mandate. The denial stated in pertinent part:

> **The request for a religious exemption from the vaccine mandate is denied.** The asserted basis for the accommodation is insufficient to grant the requested accommodation in light of the potential undue hardship to the Department.

50.     This was a boilerplate denial which all FDNY employees who were denied religious accommodations received.

51.     The FDNY erroneously considered whether an accommodation presented an undue hardship on FDNY operations using the "more than a de minimis" standard.

52.     The FDNY did not communicate with Plaintiff regarding his request for religious accommodation before issuing this denial.

53.     The FDNY's policy was to deny accommodation requests without engaging in any cooperative dialogue where they unilaterally deemed further information would not change the outcome of an accommodation request.

54.     The FDNY granted medical accommodations on more favorable terms than religious accommodations. Specifically, medical accommodations were evaluated and granted

without considering any undue hardship. However, religious accommodations were pretextually denied based on alleged undue hardship.

55. The denial Plaintiff received was a boilerplate letter sent to many other FDNY employees who were also denied religious accommodations.

56. But the FDNY did grant religious accommodations to some FDNY firefighters.

57. Those firefighters were permitted to work while submitting to weekly PCR testing.

58. Defendants refused to accommodate Plaintiff's religious beliefs because his objection to the COVID-19 vaccination was based upon that the vaccination was produced, researched, manufactured, and/or tested using aborted fetal cell lines.

59. Defendants refused to acknowledge an objection based upon the COVID-19 vaccination's connection with aborted fetal cell lines.

60. Defendants unlawfully considered the verity and accuracy of Plaintiff's religious beliefs and denied him because they disagreed with him.

61. Defendants also refused to accommodate Plaintiff's religious beliefs because he identifies as a Catholic and in the Defendants' view the Pope allows Catholics to be vaccinated.

62. Defendants denied Plaintiff's religious accommodation request because they relied upon public statements by the Pope, who they assumed was his religious leader.

63. Defendants did not have any objective basis to doubt the sincerity of Plaintiff's religious beliefs regarding COVID-19 vaccines.

64. Defendants did not have any objective basis to doubt the religious nature of Plaintiff's religious beliefs regarding COVID-19 vaccines.

65. Defendants never communicated to Plaintiff that his sincerity or the religious nature of his objection was in question, nor did they ask Plaintiff any questions or try to understand the nature of Plaintiff's religious objections in any way.

66. The Defendants had unchecked authority in determining which religious beliefs merit accommodation.

67. It was the Defendants' policy to reject applicants' religious beliefs if they were based on abortion.

68. The Defendants' denied applicants who made abortion-based objections to the COVID-19 vaccine and judged these beliefs as inaccurate and implausible.

69. It was the Defendants' policy to reject applicants' religious beliefs if they were personal and not shared by other members of the applicant's religious sect.

70. The Defendants refused to accept the validity of applicant's individual interpretations of their religious creeds.

71. The Defendants denied applicants if they did not show that refusal of vaccination was mandated by their religion.

72. Defendants refused to acknowledge a "conflict" where an applicant's religion did not explicitly require the refusal of vaccines.

73. Defendants also refused to accommodate City Workers who objected to the COVID-19 vaccination based upon a religious opposition to abortion.

74. The Defendants' accommodation policies only allowed for religious accommodations for applicants who were members of religions that they deemed recognized and established religious organizations with longstanding objections to all vaccination.

75. The Mayor admitted as much in a statement to the Press:

11

**Question:** Could you maybe go into some of that criteria so I know like with religious exemptions, for example, there have been leaders such as the Pope that have said it's okay you know, to get – for Catholics to get the vaccine. So, are there any religious exemptions that you know of?

**Mayor:** Yeah, it's a great question. Thank you. Yes. And very powerfully Pope Francis has been abundantly clear that there's nothing in scripture that suggests people shouldn't get vaccinated. Obviously, so many people of all faiths have been getting vaccinated for years and decades. There are, I believe it's two well-established religions, Christian Science and Jehovah's Witnesses that have a history on this, of a religious opposition. But overwhelmingly the faiths all around the world have been supportive of vaccination. So, we are saying very clearly, it's not something someone can make up individually. It has to be, you're a standing member of a faith that has a very, very specific long-standing objection. Go ahead.

*Transcript: Mayor de Blasio Holds Media Availability*, City of New York, September 23, 2021,

available at https://www.nyc.gov/office-of-the-mayor/news/644-21/transcript-mayor-de-blasio-

holds-media-availability.[2]

76.    And the Second Circuit found the standards the City used in deciding religious

accommodation requests to the Vaccine Mandate for teachers were neither generally applicable

nor neutral, and did not "survive strict scrutiny". *Kane v. De Blasio*, 19 F.4th 152, 169 (2d Cir.

2021). The Second Circuit held that the City's policies violated the Free Exercise Clause,

specifically rejecting the requirements that exemption requests be considered only for recognized

and established religious organizations, and that requests be denied if the religious leader

supports the vaccine, if documentation is readily available online, or if the objection is personal,

political, or philosophical. *Id.* at 168–69. Wildly, the City failed to disavow this policy, and

expanded it as an official written option to many different City agencies, *after* the Second Circuit

determined it was unconstitutional. And the undue hardship policy was more generous for those

who qualified under the overtly discriminatory policy. The Defendants' decision-makers on

---

[2] Plaintiff requests that the Court take judicial notice of the transcript of the Mayor's statements, available on the City's website.

reasonable accommodation requests continued to use these standards to decide requests, including the Plaintiff's request.

77.    On February 11, 2022, the FDNY sent Plaintiff a termination notice, stating that because of his "failure to comply with the New York City Health Commissioner's Order requiring vaccination of all City of New York employees", he was "terminated, effective February 11, 2022." In addition, Plaintiff's health benefits were "terminated effective February 13, 2022."

78.    Plaintiff was terminated on February 11, 2022, because Defendants refused to reasonably accommodate his religious beliefs.

79.    The Defendants cannot demonstrate that providing a reasonable accommodation to the Vaccine Mandate would cause an undue hardship, particularly where the FDNY accommodated other employees' religious beliefs.

80.    The FDNY granted religious and medical accommodations to FDNY employees by allowing those employees to submit weekly PCR testing.

81.    The FDNY promulgated a "Buckslip and Memo" to employees, including Plaintiff, outlining the procedures regarding the City's COVID-19 Vaccine Mandate.

82.    The Memo stated: "Employees who are awaiting determination on a reasonable accommodation request submitted on or before October 27 or who were granted a reasonable accommodation will be required to submit to weekly testing."

83.    The Memo specified that accommodated FDNY employees would "submit a weekly negative test instead of submitting proof of vaccination" to FDNY Human Resources.

84.    As of January 11, 2022, the FDNY granted approximately 105 reasonable accommodations to the COVID-19 Vaccine Mandate.

13

85.    Some Firefighters were granted religious accommodations.

86.    Defendants granted decision-makers reviewing religious accommodation requests substantial discretion in determining whether to approve or deny such requests.

87.    The policies and procedures governing religious accommodation requests were vague and lacked clear, objective criteria, allowing decision-makers to exercise broad, subjective judgment.

88.    This broad discretion enabled decision-makers to impose their own personal or ideological biases when assessing the validity of religious objections and the assumed dangers of being unvaccinated, leading to arbitrary and inconsistent outcomes.

89.    As of December 27, 2022, the FDNY granted approximately 36 reasonable accommodations specifically for Fire Operations members (this includes active-duty firefighters) of the FDNY. 30 of those accommodations were for medical reasons, and 6 were for religious reasons.

90.    Even active-duty firefighters were accommodated with weekly PCR testing.

91.    Firefighters were granted both medical and religious accommodations to the Vaccine Mandate.

92.    And New York City Police Department employees were also accommodated with weekly PCR testing, including active-duty police officers who had contact with the public and other members of the NYPD.

93.    The Defendants could have accommodated Plaintiff with weekly PCR testing.

94.    The Defendants cannot demonstrate that providing a reasonable accommodation to the Vaccine Mandate would cause an undue hardship, particularly where the Vaccine Mandate

14

only required employees to receive the initial dose(s) of the COVID-19 vaccination and did not require any subsequent booster shots.

95.     The COVID-19 vaccine does not cause prevention or transmission of the COVID-19 virus.

96.     On July 27, 2021, the Centers for Disease Control and Prevention ("CDC") promulgated guidance that stated that "[v]accinated people can still become infected and spread the virus to others." *Science Brief: COVID-19 Vaccines and Vaccination*, Centers for Disease Control and Prevention, Last Updated July 27, 2021, www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html (last accessed September 1, 2021).

97.     And on July 30, 2021, CDC Director Rochelle P. Walensky, MD, MPH issued a public statement regarding similar viral loads that vaccinated and unvaccinated people infected with COVID-19 demonstrated:

> On July 27, CDC updated its guidance for fully vaccinated people, recommending that everyone wear a mask in indoor public settings in areas of substantial and high transmission, regardless of vaccination status. This decision was made with the data and science available to CDC at the time, including a valuable public health partnership resulting in rapid receipt and review of unpublished data.

> Today, some of those data were published in CDC's Morbidity and Mortality Weekly Report (MMWR), demonstrating that Delta infection resulted in similarly high SARS-CoV-2 viral loads in vaccinated and unvaccinated people. High viral loads suggest an increased risk of transmission and raised concern that, unlike with other variants, vaccinated people infected with Delta can transmit the virus. This finding is concerning and was a pivotal discovery leading to CDC's updated mask recommendation. The masking recommendation was updated to ensure the vaccinated publix would not unknowingly transmit virus to others, including their vaccinated or immunocompromised loved ones.

*Statement from CDC Director Rochelle P. Walensky, MD, MPH on Today's MMWR*, Centers for Disease Control and Prevention, July 30, 2021, available at www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html.

98.     On or about February 9, 2023, the New York City Department of Health and Mental Hygiene amended the Vaccine Mandate, no longer requiring exclusion from the workplace for City Workers who do not provide proof of COVID-19 vaccination.

99.     The Defendants fired Plaintiff over a temporary work requirement that Defendants would be rescinding anyway.

100.    On February 10, 2023, Plaintiff contacted the FDNY Chief of Personnel to request reinstatement to his former position due to the rescinding of the Vaccine Mandate.

101.    Plaintiff submitted his reinstatement forms on April 15, 2023, within a few days of receiving the reinstatement forms.

102.    On April 17, 2023, the FDNY informed Plaintiff by e-mail that, in order to process Plaintiff's request for reinstatement, Plaintiff would have to sign a waiver waiving his right to all backpay from the time he was placed on Leave Without Pay. Plaintiff respectfully refused to sign the waiver.

103.    On June 6, 2023, the FDNY Chief of Personnel requested that Plaintiff resubmit his reinstatement forms, which Plaintiff promptly did.

104.    Plaintiff has not received any correspondence from the FDNY since resubmitting his reinstatement forms on June 6, 2023.

105.    Defendants' actions caused Plaintiff to suffer immense pain and suffering, including but not limited to shame, grief, anxiety, depression, headaches, exhaustion, and feelings of worthlessness.

106.    Additionally, Plaintiff suffered significant financial distress. In addition to losing his salary (including overtime), Plaintiff lost benefits and pension, including accumulated leave time.

## CLAIMS

### FIRST CAUSE OF ACTION

**(Violation of the Free Exercise Clause of the
First Amendment of the United States Constitution)**

107. Plaintiff reincorporates the foregoing as if fully written herein.

108. The Free Exercise Clause of the First Amendment to the United States Constitution prohibits the government's burdening of a sincerely held religious belief. The First Amendment provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I. "[A] law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Church of the Lukumi Babalu Aye, Inc.v. Hialeah*, 508 U.S. 520, 546 (1993). A non-neutral or non-generally applicable law must be the least restrictive means available to further a compelling government interest in order to withstand strict scrutiny.

109. Plaintiff's sincerely held religious beliefs and practices prohibit him from receiving the COVID-19 vaccination.

110. The Defendants' Vaccine Mandate and the denial of Plaintiff's request for a reasonable accommodation and religious exemption substantially burden Plaintiff's free exercise of religion, in that compliance would require violation of his religious beliefs as the sole alternative to suffering adverse employment actions—including LWOP and termination.

111. Defendants' refusal to accommodate Plaintiff and other employees' religious beliefs imposed coercive pressure on Plaintiff to change or violate his sincerely held religious beliefs.

112. The Defendants' Vaccine Mandate and policies on reasonable accommodations are not generally applicable.

113. The Defendants retain sole discretion to grant exemptions and accommodations to the Vaccine Mandate.

114. Defendants had substantial, unbridled discretion over which religious exemption requests would be granted and which would be denied based upon value judgments on the applicants' beliefs.

115. Defendants allowed volunteer firefighters and personnel to work unvaccinated.

116. Defendants had mutual aid agreements with other municipalities.

117. Defendants granted secular accommodations on more favorable terms than religious exemptions.

118. Defendants had a lower bar for denying religious exemptions.

119. Defendants granted medical exemptions regardless of undue hardship but denied religious exemptions due to alleged undue hardship.

120. The Defendants created a formal mechanism for granting exemptions to the Vaccine Mandate, including religious exemptions.

121. The face of the Vaccine Mandate itself—in the Order of the New York City Commissioner of Health and Mental Hygiene—provides for religious accommodations.

122. The Defendants have granted religious and medical exemptions to the Vaccine Mandate to FDNY employees and other City Workers.

123. Defendants arbitrarily denied Plaintiff's religious exemption request based upon a discriminatory rejection of Plaintiff's religious beliefs.

124. The Defendants permitted unvaccinated FDNY employees and City Workers to continue working in person while terminating Plaintiff.

125. Unvaccinated FDNY employees with accommodations were permitted to continue working in person.

126. Defendants permitted thousands of FDNY employees and City Workers to continue working unvaccinated while their accommodation requests were pending.

127. The Defendants' Vaccine Mandate and policies on reasonable accommodations are not neutral.

128. Defendants refused to accept sincerely held religious beliefs and practices that conflict with the Vaccine Mandate, including Plaintiff's.

129. Defendants individually assessed the reasons that Plaintiff refused the COVID-19 vaccination, and decided Plaintiff's religious beliefs were not worthy of a religious exemption.

130. Defendants refused to acknowledge the Plaintiff's and other City Workers' religious objections as conflicting with the Vaccine Mandate.

131. In particular, Defendants refused to acknowledge any abortion-based objections to the COVID-19 vaccination, rejecting these objections as not constituting a religious conflict.

132. Defendants claimed that any religious objections based upon abortion were incorrect and therefore not valid.

133. Defendants relied upon the Pope's public comments on the COVID-19 vaccine when denying Roman Catholic applicants like Plaintiff.

134. Defendants refused to acknowledge the religious nature of an objection to the COVID-19 vaccination, mischaracterizing Plaintiff's (and other City Workers') objections as merely personal preferences.

135.    Defendants passed judgment on Plaintiff's religious beliefs and presupposed the illegitimacy of those beliefs and practices.

136.    Defendants incorrectly compared Plaintiff's belief to others.

137.    Defendants discriminated against the Plaintiff because he is a Roman Catholic.

138.    Defendants refused to accommodate Plaintiff because he is a Roman Catholic.

139.    Defendants denied applicants whose views they disagreed with, including the Plaintiff.

140.    Defendants improperly preferred certain religious sects when granting religious exemptions to the Vaccine Mandate.

141.    Defendants gave preferential treatment to similarly situated employees who also remained unvaccinated for religious reasons.

142.    Defendants singled out Plaintiff by refusing to acknowledge that his beliefs are religious, while allowing others with religious objections from certain religious sects to continue working.

143.    Defendants are hostile to Plaintiff's religious beliefs because Plaintiff is not a member of one of the Defendants' "preferred sects."

144.    The Defendants limited religious exemptions to applicants who belonged to established, organized religions which had a long-standing public history of opposition to vaccination.

145.    Defendants demonstrated a hostility to Plaintiff's religious practices and beliefs.

146.    The Defendants improperly segregated Plaintiff from others with religious objections to the Vaccine Mandate by allowing applicants with certain religious beliefs to continue working while submitting to weekly testing but terminating Plaintiff.

20

147.    Defendants demonstrated animus to Plaintiff's specific religious practices in burdening Plaintiff's religious exercise while allowing other religious objectors to continue working.

148.    Defendants implemented the Vaccine Mandate in a discriminatory manner by implementing denominational preferences for certain religious sects, such as Christian Scientists and Jehovah's Witnesses, and other sects that the Defendants recognize as established.

149.    Defendants refused to provide Plaintiff with a religious exemption based on their unilateral determination regarding the religious necessity of refusing the COVID-19 vaccination.

150.    Defendants refused to provide Plaintiff with a religious exemption based on their personal interpretations of the correctness of Plaintiff's religious beliefs and practices.

151.    Defendants refused to provide Plaintiff with a religious exemption based on their personal interpretations of the plausibility of Plaintiff's religious understandings.

152.    Defendants substituted their judgment regarding what Plaintiff's faith requires.

153.    Defendants denied Plaintiff based on the rejection of the verity of his religious beliefs.

154.    Defendants do not have a compelling interest in requiring Plaintiff to violate his sincerely held religious beliefs as a result of the inconclusive functionality of the available COVID-19 vaccines in preventing viral transmission, carry, and illness.

155.    Moreover, Defendants' interest in mandating Plaintiff to be vaccinated cannot be compelling where other employees are provided reasonable accommodations for both religious and medical reasons.

156.    Less restrictive means to reduce the spread of COVID-19 are available to the Defendants, including masking, PCR testing, antibody testing, temperature checks, Light Duty,

offline position, remote work, among others. As such, the Defendants' COVID-19 vaccination mandate fails strict scrutiny.

157.    Terminating Plaintiff was not the least restrictive means of stemming the spread of COVID-19.

158.    Terminating Plaintiff imposed discipline on Plaintiff for exercising his right to free exercise of his religious beliefs.

159.    Defendants' actions injured and continue to injure Plaintiff by chilling his religious activity through the withholding of pay, discipline, termination, and the refusal to reinstate Plaintiff to his prior employment position.

160.    Plaintiff is entitled to a declaration that the Defendants violated his First Amendment right to the free exercise of religion.

161.    Plaintiff is entitled to equitable relief.

162.    Further, Plaintiff is entitled to reasonable costs of this lawsuit, including attorneys' and experts' fees pursuant to 42 U.S.C. § 1988 and other applicable law, as well as compensatory damages, including pain and suffering, and punitive damages against the Defendants, including emotional distress and pain and suffering in an amount to be proven at trial. The U.S. Supreme Court has held that individual damages are available against violators. *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020).

163.    A court must consider: "(1) degree of reprehensibility of the defendant's conduct, (2) relationship of the punitive damages to the compensatory damages, and (3) criminal and civil penalties imposed by the state's law for the misconduct in question." *Jennings v. Yurkiw*, 18 F.4th 383, 390 (2d Cir. 2021) (quoting *Payne v. Jones*, 711 F.3d 85, 101 (2d Cir. 2013)).

22

164.    Defendants' violation of Plaintiff's religious exercise evidenced an indifference to and a reckless disregard of Plaintiff's religious rights.

## SECOND CAUSE OF ACTION

## (Violation of Federal Establishment Clause)

165.    Plaintiff reincorporates the foregoing as if fully written herein.

166.    Defendants' policies on religious accommodations for the Vaccine Mandate disadvantaged Roman Catholics.

167.    Defendants had no secular purpose for refusing to accommodate Plaintiff's religious beliefs and practices.

168.    Defendants implemented policies that preferred certain established, organized religions over other religions.

169.    Defendants relied upon Pope Francis' public statements on the COVID-19 vaccinations and denied Roman Catholic employees including Plaintiff a religious accommodation based upon these statements.

170.    The purpose of the Defendants' policies was a hostility to religious beliefs they did not prefer.

171.    The Defendants' policies rejected the validity of certain religious beliefs while accepting beliefs from religions they preferred.

172.    Thes policies aided members of preferred religions in receiving religious exemptions while those from disfavored religions, like Plaintiff, were denied exemptions and summarily terminated.

173.    The Defendants' policies demonstrated overt favoritism among certain religious sects, including Christian Scientists and Jehovah's Witnesses.

23

174.   The Defendants' policies demonstrated blatant animus toward Roman Catholics.

175.   The Defendants refused to accommodate disfavored religious beliefs and practices, including the Plaintiff's.

176.   The Defendants' policies are motivated by religious animus.

177.   There is no secular basis for Defendants' policies.

178.   The Defendants' policies were implemented with the specific intention of including particular religious denominations and excluding others—including Plaintiff's.

179.   The primary effect of the Defendants' refusal to accommodate Plaintiff's religious beliefs and practices is to inhibit religion.

180.   The Defendants' policies impose a burden on members of disfavored religions, like Plaintiff, by forcing them to receive a vaccination that conflicts with their religious beliefs, while providing an advantage upon preferred religions by allowing them to continue working unvaccinated.

181.   Moreover, an additional burden imposed by the Defendants' policies is that the Defendants selectively claimed a "potential" undue hardship defense on those who were members of disfavored sects.

182.   Defendants classified certain preferred religious beliefs as worthy of exemption, while excluding all others.

183.   Defendants rejected religious beliefs that they did not agree with, considered implausible, incorrect, or incomprehensible. This includes Plaintiff's beliefs about abortion.

184.   Defendants limited religious exemptions to bona fide members of certain recognized religious organizations, such as Christian Scientists and Jehovah's Witnesses.

24

185. The Defendants' refusal to accommodate Plaintiff's religious beliefs, and their discriminatory accommodation policies, foster an excessive entanglement with religion.

186. The Defendants' policies compelled the deciders of exemption requests to analyze the makeup, structure, faith, and tenets of religions in order to determine who qualified for a religious exemption.

187. Defendants inspected and evaluated the religious content of the religious organization of an employee who applied for a religious exemption.

188. Defendants rejected Plaintiff's religious beliefs as unworthy of exemption.

189. Defendants' conduct, as described above, constitutes an impermissible establishment of religion in violation of the Establishment Clause of the First Amendment to the United States Constitution (U.S. Const. Amend. I).

## THIRD CAUSE OF ACTION

**(Failure to Accommodate in Violation of the New York City Human Rights Law)**

190. Plaintiff reincorporates the foregoing as if fully written herein.

191. At all relevant times, the NYCHRL has been in full force and effect and has applied to Defendants' conduct.

192. Pursuant to the NYCHRL,

It shall be an unlawful discriminatory practice for an employer or an employee or agent thereof to impose upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such person to violate, or forego a practice of, such person's creed or religion, … and the employer shall make reasonable accommodation to the religious needs of such person.

N.Y.C. Admin. Code § 8–107(3)(a).

193. At all relevant times, the Defendants had the power to hire, promote, and discharge Plaintiff.

25

194.     Plaintiff has sincerely held religious beliefs which prohibit Plaintiff from receiving the COVID-19 vaccines.

195.     The Defendants required Plaintiff to receive the COVID-19 vaccine to retain his employment.

196.     However, vaccination is not a condition of employment for those who are eligible for a religious or medical accommodation.

197.     The Vaccine Mandate provided for reasonable accommodations on its face.

198.     And the Defendants implemented a procedure for accepting accommodation requests.

199.     Plaintiff requested a reasonable accommodation to the Defendants' requirement that he receive the COVID-19 vaccination based on his sincerely held religious beliefs.

200.     Defendants denied Plaintiff's request for a religious accommodation.

201.     Defendants failed to provide Plaintiff with a reasonable accommodation of his religious observance, practice, and belief (i.e., that he cannot take the COVID-19 vaccine), which precludes him from complying with the Vaccine Mandate.

202.     The New York City Human Rights Law explicitly defines undue hardship:

"Reasonable accommodation", as used in this subdivision, shall mean such accommodation to an employee's or prospective employee's religious observance or practice as shall not cause undue hardship in the conduct of the employer's business. The employer shall have the burden of proof to show such hardship. "Undue hardship" as used in this subdivision shall mean an accommodation requiring significant expense or difficulty (including a significant interference with the safe or efficient operation of the workplace or a violation of a bona fide seniority system).

N.Y.C. Admin. Code § 8-107(3)(b).

203.     The FDNY unlawfully considered Plaintiff's accommodation request using the incorrect standard for undue hardship: the "more than a de minimis" standard.

26

204.     Plaintiff was able to perform the essential duties of his job with a reasonable accommodation.

205.     Plaintiff vaccination status did not prevent him from fulfilling the obligations of his position.

206.     Accommodating Plaintiff would not require significant expense or difficulty from the Defendants.

207.     Accommodating Plaintiff would not significantly interfere with the safe or efficient operation of the Defendants' workplace.

208.     Accommodating Plaintiff would not require Defendants to violate a bona fide seniority system.

209.     Defendants accommodated other FDNY employees with weekly PCR testing.

210.     Defendants accommodated other FDNY firefighters with weekly PCR testing.

211.     Accommodated firefighters were permitted to continue working, respond to fires, and sleep in the firehouse.

212.     Defendants accommodated other City Workers with weekly PCR testing, including police officers.

213.     New York City Police Department police officers with accommodations were permitted to continue working, responding to emergencies, having close contact with the public and other police officers.

214.     Defendants cannot demonstrate that accommodating Plaintiff would cause an undue hardship.

215.   Instead of accommodating Plaintiff's religious beliefs, Defendants terminated Plaintiff because he could not receive the COVID-19 vaccination.

216. Plaintiff was terminated because the Defendants refused to accommodate his religious beliefs.

217. Defendants had no objective basis for questioning the religious nature of Plaintiff's religious beliefs.

218. Defendants had no objective basis for questioning the sincerity of Plaintiff's religious beliefs.

219. Plaintiff sufficiently articulated and explained the religious nature of his conflict with the Vaccine Mandate.

220. Defendants discriminated against Plaintiff's religious beliefs.

221. As a direct and proximate result of Defendants' unlawful discriminatory practices, Plaintiff has suffered, and continues to suffer, substantial losses, including but not limited to the loss of past and future earnings, compensation and benefits, increases, promotions, bonuses, pension, and other employment benefits, for which Plaintiff is entitled to an award of monetary damages which will be determined at trial, and other relief.

222. As a direct and proximate result of Defendant' failure to accommodate, Plaintiff suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which Plaintiff is entitled to an award of monetary damages in an amount to be determined at trial.

223. As a direct and proximate result of Defendants' failure to accommodate, Plaintiff is thus entitled to injunctive and declaratory relief, as well as compensatory damages, including pain and suffering, and punitive damages for the injuries and loss sustained as a result of

Defendants' unlawful discriminatory conduct under the NYCHRL, in an amount to be determined at trial.

224. Defendants willfully violated Plaintiff's right to a reasonable accommodation.

225. Defendants willfully and wrongfully terminated Plaintiff.

226. Defendants knew they were acting in violation of the law.

227. The Defendants knew that Plaintiff's beliefs qualified as religious under the law.

228. The Defendants knew that Plaintiff qualified for a reasonable accommodation.

229. Defendants categorically rejected Plaintiff's religious beliefs.

230. Defendants summarily denied Plaintiff's request for accommodation without any individualized consideration.

231. Defendants knew that they were legally required to engage in an interactive process but failed to engage in such process with Plaintiff regarding his request for an accommodation before summarily denying Plaintiff's request.

232. Defendants did not consider Plaintiff's individual job duties before refusing to accommodate him.

233. Defendants callously rejected Plaintiff's request for accommodation, displaying a blatant lack of any true consideration before hastily issuing a boilerplate denial.

234. Defendants acted with malice.

235. Defendants' actions amount to willful or wanton negligence.

236. Defendants' discrimination was willful.

237. Defendants' discrimination was reckless.

238. Defendants consciously disregarded Plaintiff's right to a reasonable accommodation.

239. Defendants consciously disregarded Plaintiff's right to retain his employment.

29

240. Defendants' conduct was so reckless as to amount to a conscious disregard of Plaintiff's rights.

241. Defendants acted with reckless indifference to Plaintiff's rights.

242. As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to punitive damages under NYCHRL in an amount to be determined at trial.

243. Plaintiff is further entitled to an award of attorney's fees, expert fees, and other costs under the NYCHRL. N.Y.C. Admin. Code §8-502(g).

## FOURTH CAUSE OF ACTION

### (Failure to Accommodate in Violation of the NYSHRL)

244. Plaintiff reincorporates the foregoing as if fully written herein.

245. At all relevant times, the NYSHRL has been in full force and effect and has applied to Defendants' conduct.

246. The NYSHRL provides:

It shall be an unlawful discriminatory practice for any employer, or an employee or agent thereof, to impose upon a person as a condition of obtaining or retaining employment, including opportunities for promotion, advancement or transfers, any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion, including but not limited to the observance of any particular day or days or any portion thereof as a sabbath or other holy day in accordance with the requirements of his or her religion or the wearing of any attire, clothing, or facial hair in accordance with the requirements of his or her religion, unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's or prospective employee's sincerely held religious observance or practice without undue hardship on the conduct of the employer's business.

N.Y. Executive Law § 296(10)(a).

247. "Undue hardship" is defined as "an accommodation requiring significant expense or difficulty (including significant interference with the safe or efficient operation of the workplace…)." N.Y. Executive Law § 296(10)(d).

248. If the undue hardship is alleged based on a safety concern, "the employer must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective information to ascertain: the nature, duration and severity of the risk; the probability that the potential injury will actually occur, and whether reasonable accommodations, such as modification of policies, practices or procedures, will mitigate the risk." 9 CRR-NY 466.11.

249. At all relevant times, the Defendants were employers of Plaintiff.

250. Plaintiff has sincerely held religious beliefs which prohibit him from receiving the COVID-19 vaccines.

251. The Defendants required Plaintiff to receive the COVID-19 vaccine to retain his employment.

252. Plaintiff requested a reasonable accommodation to the Defendants' requirement that Plaintiff receive the COVID-19 vaccination.

253. Defendants rejected Plaintiff's religious beliefs without reason.

254. Defendants had no objective basis for questioning the religious nature of Plaintiff's religious beliefs.

255. Defendants had no objective basis for questioning the sincerity of Plaintiff s religious beliefs.

256. Plaintiff sufficiently articulated and explained the religious nature of his conflict with the Vaccine Mandate.

257. Defendants discriminated against Plaintiff's religious beliefs and practice.

258. Defendants denied Plaintiff's request for a reasonable accommodation.

259. Defendants failed to provide Plaintiff with a reasonable accommodation of Plaintiff's religious observance, practice, and belief (i.e., refusing the COVID-19 vaccine), which precludes Plaintiff from complying with the Vaccine Mandate.

260. Plaintiff was able to perform the essential duties of his job with a reasonable accommodation.

261. Accommodating Plaintiff would not require significant expense or difficulty from the Defendants.

262. Accommodating Plaintiff would not significantly interfere with the safe or efficient operation of the Defendants' workplace.

263. Accommodating Plaintiff would not require the Defendants to violate a bona fide seniority system.

264. Defendants failed to engage in any interactive process with Plaintiff regarding Plaintiff's accommodation request.

265. Defendants failed to engage in good faith with Plaintiff in order to understand Plaintiff's need for accommodation.

266. Plaintiff sufficiently articulated his sincerely held religious beliefs to the Defendants.

267. Defendants violated the NYSHRL by denying Plaintiff's request for a reasonable accommodation without first engaging in an interactive process.

268. Defendants refused to allow Plaintiff to keep his job because Plaintiff could not receive the COVID-19 vaccine without violating his religious beliefs.

269. Plaintiff was terminated because the Defendants failed to consider any reasonable accommodations to the Vaccine Mandate.

270. As a direct and proximate result of Defendants' failure to accommodate, Plaintiff has suffered, and continues to suffer, substantial losses, including but not limited to the loss of past and future earnings, compensation and benefits, increases, promotions, bonuses, and other employment benefits, for which Plaintiff is entitled to an award of monetary damages which exceeds the jurisdictional limits of all lower courts, and other relief.

271. As a direct and proximate result of Defendants' failure to accommodate, Plaintiff suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which Plaintiff is entitled to an award of monetary damages in an amount to be determined at trial.

272. Plaintiff is thus entitled to injunctive and declaratory relief—as well as compensatory and punitive damages—for the injuries and loss sustained as a result of Defendants' unlawful discriminatory conduct under the NYSHRL, in an amount to be determined at trial.

273. Defendants willfully violated Plaintiff's right to a reasonable accommodation.

274. Defendants willfully and wrongfully terminated Plaintiff.

275. Defendants knew they were acting in violation of the law.

276. The City already had a system in place for weekly PCR testing, which Defendants state in their written policy is not an undue hardship.

277. Defendants made a conscious decision to violate Plaintiff's rights.

278. The Defendants knew that they were required under the law to engage in a good faith discussion with Plaintiff in an attempt to understand Plaintiff's accommodation needs. However, the Defendants did not engage in such good faith interactive process or cooperative dialogue with Plaintiff.

33

279.    Defendants did not consider Plaintiff's individual job duties before refusing to accommodate Plaintiff.

280.    Defendants acted with malice.

281.    Defendants' actions amount to willful or wanton negligence.

282.    Defendants' discrimination was willful.

283.    Defendants' discrimination was reckless.

284.    Defendants consciously disregarded Plaintiff's right to a reasonable accommodation.

285.    Defendants consciously disregarded Plaintiff's right to an interactive process.

286.    Defendants consciously disregarded Plaintiff's right to retain his employment.

287.    Defendants' conduct was so reckless as to amount to a conscious disregard of Plaintiff's rights.

288.    Defendants acted with reckless indifference to Plaintiff's rights.

289.    As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to punitive damages under the NYSHRL in an amount to be determined at trial.

290.    Plaintiff is further entitled to an award of attorney's fees, expert fees, and other costs under the NYSHRL. Executive Law § 297(10).

## **FIFTH CAUSE OF ACTION**

### **(Failure to Engage in a Cooperative Dialogue in Violation of the NYCHRL)**

291.    Plaintiff reincorporates the foregoing as if fully written herein.

292.    The NYCHRL requires employers to engage in a cooperative dialogue with an employee who requests a reasonable accommodation on the basis of religion.

293.    The NYCHRL provides a separate cause of action against employers who fail to engage in a cooperative dialogue with employees, like Plaintiff, who request a reasonable accommodation:

It shall be an unlawful discriminatory practice for an employer, labor organization or employment agency or an employee or agent thereof to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity has notice may require such an accommodation: (1) For religious needs as provided in subdivision 3 of this section.

N.Y.C. Admin. Code § 8-107 (28)(a).

294.    Defendants were obligated to engage in a cooperative dialogue with Plaintiff regarding Plaintiff's need for a reasonable accommodation to the Vaccine Mandate.

295.    Defendants refused to engage in any cooperative dialogue, and simply denied Plaintiff's request for a reasonable accommodation.

296.    Defendants violated N.Y.C. Admin. Code § 8-107 (28)(a)(1) by failing to engage in a cooperative dialogue with Plaintiff regarding Plaintiff's request for a reasonable accommodation to the Vaccine Mandate.

297.    The NYCHRL prohibits Defendants from denying Plaintiff's request for a reasonable accommodation until Defendants engage in a cooperative dialogue with Plaintiff:

The determination that no reasonable accommodation would enable the person requesting an accommodation to satisfy the essential requisites of a job or enjoy the right or rights in question may only be made after the parties have engaged, or the covered entity has attempted to engage, in a cooperative dialogue.

N.Y.C. Admin. Code § 8-107 (28)(e).

298.    However, Defendants violated the NYCHRL by denying Plaintiff's request for a reasonable accommodation without first engaging in a cooperative dialogue.

299.    Pursuant to the NYCHRL:

35

The term "cooperative dialogue" means the process by which a covered entity and a person entitled to an accommodation, or who may be entitled to an accommodation under the law, engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity.

N.Y.C. Admin. Code § 8-102.

300.    The FDNY never had *any* communications with Plaintiff regarding his accommodation request before denying Plaintiff's reasonable accommodation request.

301.    Defendants did not communicate with Plaintiff regarding Plaintiff's accommodation needs.

302.    Defendants did not communicate with Plaintiff regarding any potential accommodations that may address Plaintiff's accommodation needs before denying Plaintiff's reasonable accommodation request.

303.    Defendants did not communicate with Plaintiff regarding alternatives to Plaintiff's accommodation request before denying Plaintiff's reasonable accommodation request.

304.    Defendants did not communicate with Plaintiff regarding the difficulties that any potential accommodations may pose to Defendants before denying Plaintiff's reasonable accommodation request.

305.    Defendants did not communicate with Plaintiff regarding Plaintiff's religious conflict with the Vaccine Mandate before denying Plaintiff's reasonable accommodation request.

306.    Defendants knew that they were legally required to engage in a cooperative dialogue but failed to engage in such dialogue with Plaintiff regarding Plaintiff's request for an accommodation before summarily denying his request.

307. Defendants knew that they were legally required to engage in an interactive process but failed to engage in such process with Plaintiff regarding Plaintiff's request for an accommodation before summarily denying his request.

308. Defendants did not consider Plaintiff's individual job duties before refusing to accommodate Plaintiff.

309. Defendants callously rejected Plaintiff's request for accommodation, displaying a blatant lack of any true consideration before hastily issuing a boilerplate denial.

310. Defendants acted with malice.

311. Defendants' actions amount to willful or wanton negligence.

312. Defendants' discrimination was willful.

313. Defendants' discrimination was reckless.

314. Defendants consciously disregarded Plaintiff's right to a reasonable accommodation.

315. Defendants consciously disregarded Plaintiff's right to a cooperative dialogue.

316. Defendants consciously disregarded Plaintiff's right to an interactive process.

317. Defendants' conduct was so reckless as to amount to a conscious disregard of Plaintiff's rights.

318. Defendants acted with reckless indifference to Plaintiff's rights.

319. As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to punitive damages under NYCHRL in an amount to be determined at trial.

320. As a direct and proximate result of Defendants' unlawful discriminatory practices, Plaintiff has suffered, and continues to suffer, substantial losses, including but not limited to the loss of past and future earnings, compensation and benefits, increases, promotions, bonuses, and

37

other employment benefits, for which Plaintiff is entitled to an award of monetary damages which exceeds the jurisdictional limits of all lower courts, and other relief.

321.    As a direct and proximate result of Defendants' unlawful discriminatory practices, Plaintiff suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which Plaintiff is entitled to an award of monetary damages in an amount to be determined at trial.

322.    As a direct and proximate result of Defendants' violations of the NYCHRL, N.Y.C. Admin. Code § 8-107 (28)(a)(1) and § 8-107 (28)(e), Plaintiff is entitled to declaratory and injunctive relief and Defendants are liable to Plaintiff for compensatory damages, including pain and suffering, and punitive damages in an amount to be determined at trial  pursuant to N.Y.C. Admin. Code §8-502(a), and for costs and reasonable attorney's fees pursuant to N.Y.C. Admin. Code §8-502(g).

<strong><u>Prayer for Relief</u></strong>

**WHEREFORE**, the Plaintiff prays that this Court grant judgment to him containing the following relief:

A.    A declaratory judgment that the Defendants' failure to accommodate and failure to engage in a cooperative dialogue with Plaintiff are unlawful discriminatory practices under the New York City Human Rights Law and the New York State Human Rights Law;

B.    A declaratory judgment that the Defendants' actions violated the Plaintiff's rights pursuant to the Free Exercise Clause and the Establishment Clause of the First Amendment of the United States Constitution;

C.      An order that Defendants reinstate Plaintiff to his former position with full seniority, status, salary increments, bonuses and benefits, to the same extent that Plaintiff would have received but for Defendants' unlawful conduct;

D.      An award to Plaintiff of compensatory damages for the Plaintiff's lost wages, back pay, front pay, overtime, and benefits, in an amount to be determined at trial;

E.      An award to Plaintiff of compensatory damages for the pain and suffering, humiliation, mental anguish, damages to reputation and livelihood, and emotional distress sustained by Plaintiff in an amount to be determined at trial;

F.      An award to Plaintiff for costs in this action, including reasonable attorney's fees and expert fees under 42 U.S.C. §1988, the New York City Human Rights Law and New York State Human Rights Law;

G.      An award to Plaintiff for punitive damages in an amount to be determined at trial, in order to punish the Defendant's intentional unlawful discriminatory practices;

H.      An order for civil fines and penalties pursuant to New York Executive Law § 297(9);

I.      An award of pre- and post-judgment interest on all amounts awarded to the Plaintiff at the highest rates and from the earliest dates allowed by law on all causes of action;

J.      Such other and further relief this Court may deem just and proper.


## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury for all the issues leaded herein so triable.

Dated: Staten Island, New York        Respectfully submitted,
      September 12, 2024

_____
Christina Martinez, Esq.
Law Offices of Christina M. Martinez
245 Bricktown Way, Suite J
Staten Island NY 10309
T: (347) 215-4543
ChristinaMartinezEsq@gmail.com

***Attorney for Plaintiff***

40

**VERIFICATION**

STATE OF NEW YORK          )
                          )   ss.
COUNTY OF *Bronx*         )

I, SALVATORE MAITA, being duly sworn, deposes and says:

1. I am the Plaintiff in the within action.

2. I have reviewed the contents of this Complaint and verify that the statements contained herein are true to the best of my knowledge, except as to matters alleged on information and belief, and as to those matters, I believe them to be true.

3. I am aware that if any of the statements contained in the Complaint are willfully false, I am subject to punishment.

_____
SALVATORE MAITA

Sworn to before me this
16th day of September, 2024

_____
Notary Public

SHARON LOCKE STONEY
Notary Public - State of New York
NO. 01LO4995518
Qualified in Westchester County
My Commission Expires Apr 27, 2026