Docket No. 1:24-cv-06559 (DG) (VMS)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SALVATORE MAITA,

                    Plaintiff,

        v.

CITY OF NEW YORK,

                    Defendant.

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Christina Martinez, Esq.
*Attorney for Plaintiff*
Martinez & Loiacono PLLC
245 Bricktown Way, Suite J
Staten Island NY 10309
T: (347) 215-4543
E-mail: ChristinaMartinezEsq@gmail.com

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ………………………………………………………… iii

PRELIMINARY STATEMENT ……………………………………………....….… 1

STATEMENT OF FACTS ………………………………………………...….…..... 1

STANDARD OF LAW ……………………………………………………………….. 4

ARGUMENT …………………………………………………………………..…. 5

POINT I ………………………………………………………………………..…. 5

    Plaintiff States Viable Claims for Failure to Accommodate Pursuant to NYCHRL and NYSHRL

    A.  Plaintiff's refusal of the COVID-19 vaccine is a religious practice entitled to protection under the NYSHRL and NYCHRL. …………….…… 6

    B.  Plaintiff suffered an adverse employment action. …………………………8

    C.  Defendant's undue hardship arguments are premature, and Defendant cannot meet its burden of proof of undue hardship in any event. …………… 9

POINT II ……………………………………………………………….…….….. 13

    Plaintiff States a Viable Free Exercise Claim Under the First Amendment

    A.  The City unlawfully applied a "centrality" test, dismissing Plaintiff's beliefs because they are not universally held by all Catholics. ………..……. 13

    B.  The City improperly applied a "consistency" test, rejecting Plaintiff's objection based on illusory inconsistencies with other medical choices. …… 16

    C.  The City's religious accommodation policies are not neutral or generally applicable and cannot survive strict scrutiny. …………………….. 18

POINT III…………………………………………………………………………… 20

    Plaintiff States a Viable Establishment Clause Claim Under the First Amendment

POINT IV…………………………………………………………………………….. 24

i

Plaintiff States a Viable Failure to Engage in a Cooperative Dialogue
Claim Under the NYCHRL

CONCLUSION ……………………………………………………………….. 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bacon v. Woodward*, 104 F.4th 744 (9th Cir. 2024) …………………………….....… 19, 20

*Baker v. Home Depot,* 445 F.3d 541 (2d Cir. 2006) …………………………….…… 6, 7

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) …………………...……….…… 5

*Bowles v. New York City Transit Auth.*, 285 F. App'x 812 (2d Cir. 2008) …………….…… 8

*Burwell v. Hobby Lobby*, 573 U.S. 682 (2014) ……………………………...………... 18

*Chinchilla v. New York City Police Dep't*,
No. 23 CIV. 8986 (DEH), 2024 WL 3400526 (S.D.N.Y. July 12, 2024) ……………...….... 9

*Church of the Lukumi Babalu Aye, Inc.v. Hialeah*, 508 U.S. 520 (1993) ……….……...….. 18

*Commack Self-Serv. Kosher Meats, Inc. v. Weiss*, 294 F.3d 415 (2d Cir. 2002) …...….…… 23

*Doe v Bloomberg L.P.*, 36 NY3d 450 (2021) …………………………...…..…….….. 5

*Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173 (9th Cir. 2021) ………………………….. 8

*Dr. A v. Hochul*, 142 S. Ct. 552 (2021, Gorsuch, J., dissenting) ……………………………… 8

*Emilee Carpenter, LLC v. James*, 107 F.4th 92 (2d Cir. 2024) ……………………………. 21

*Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872 (1990) …………………….. 15

*Ferrelli v. State of N.Y. Unified Court Sys.*, 2022 WL 673863(N.D.N.Y., Mar. 7, 2022) …...…. 8

*Fifth Ave. Presbyterian Church v. City of New York,* 293 F.3d 570 (2d Cir. 2002) ……...…… 15

*Fowler v. Rhode Island*, 345 U.S. 67 (1953) …………………………………….… 23

*Frazee v. Illinois Dep:t of Emp. Sec.*, 489 US 829 (1989) …………………...…….…. 21

*Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021) ……………………...…….….. 18

*Furno v. New York City Police Department*,
Index No. 85021/2023 (N.Y. Sup. Ct., Richmond Cnty.) …………………………………. 15

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

*Goldman v Sol Goldman Invs. LLC*, 2022 US Dist LEXIS 175353 (SDNY Sep. 27, 2022) ... 24

*Groff v. DeJoy*, 600 U.S. 447  (2023) ………………………………………..…..... 11

*Heiden v NY City Health & Hosps. Corp.*,
2023 US Dist LEXIS 5583 (SDNY Jan. 11, 2023) …………………………………….. 24

*Hosking v Mem. Sloan-Kettering Cancer Ctr.*, 186 AD3d 58 (1st Dept 2020) ………...…. 12

*Hernandez v. Commissioner*, 490 U.S. 680 (1989) ………………………….……… 15

*Jacobsen v. New York City Health & Hospitals Corp.*, 22 N.Y.3d 824  (2014) ………..…..... 12

*Kane v. de Blasio*,
575 F. Supp. 3d 435 (S.D.N.Y. 2021) ……………………………………………..…….. 8
19 F.4th 152 (2d Cir. 2021) ……………………………..……..... 14, 15, 18, 19, 20

*Keene v. City & Cnty. of San Francisco*, 2023 WL 3451687 (9th Cir. May 15, 2023) ………. 8

*Kennedy v. Bremerton School District*, 597 U.S. 507 (2022) ……………………………….. 21

*Larson v. Valente*, 456 U.S. 228 (1982) …………………………………….……… 21, 22

*LeBlanc v. United Parcel Serv.*,
No. 11-cv-6983 (KPF), 2014 WL 1407706 (S.D.N.Y. 2014) ……………………………..... 12

*Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208–09 (2d Cir. 2020) ……………………….. 5

*Matter of Marsteller v. City of NY*, 217 A.D.3d 543 (1st Dep't 2023) ………………..…… 24

*Matter of Mental Hygiene Legal Serv. v Daniels*, 33 NY3d 44 (NY 2019) …………......... 24

*McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184 (2d Cir.2007) …………….…….…..... 4

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102  (2d Cir. 2013) ………….. 6, 7

*N.Y.C. Tr. Auth. v Exec. Dept., Div. of Human Rights*, 89 NY2d 79 (N.Y. 1996)……………. 13

*New Yorkers for Religious Liberty, Inc. v. New York*,
125 F.4th 319 (2d Cir. Nov. 13, 2024) ……………………………………........… 14

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

*Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67 (2d Cir.1998) …………………….…….... 9

*Rizzo v. New York City Dep't of Sanitation*,
No. 23-CV-7190 (JMF), 2024 WL 3274455 (S.D.N.Y. July 2, 2024) ………………….....… 9

*Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894 (8th Cir. 2024) ……………….……… 8

*Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020) ……………………….. 19, 20

*Sherr v. Northport-East Northport Union Free School District*,
672 F. Supp. 81 (E.D.N.Y. 1987) ………………………………………………….….. 22

*Sughrim v. New York*, 690 F. Supp. 3d 355 (S.D.N.Y. 2023) ………………….…………….. 16

*Tandon v. Newsom*, 593 U.S. 61 (2021) ……………………………………….………....... 19

*Thomas v. Review Bd.*, 450 U.S. 707 (1981) …………………….…………… 7, 16, 17, 21

*Together Emps. v. Mass Gen. Brigham Inc.*, 19 F.4th 1 (1st Cir. 2021) ……………………….. 8

*United States v. Ballard*, 322 U.S. 78 (1944) ……………………………………..……. 21, 23

*United States v. Seeger*, 380 U.S. 163 (1965) …………………………....…………………… 23

*U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022) …………………………………. 8

*Vasquez v. City of New York*,
No. 22-CV-05068 (HG) (VMS),
2024 WL 1348702 (E.D.N.Y. Mar. 30, 2024) …………………………….……….…… 9
(E.D.N.Y. June 2, 2025) …………………………………………………....………… 9

*We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 272-273 (2021),
*opn clarified* 17 F.4th 368 (2d Cir. 2021) …………………………………………….…… 8

*Welsh v. U.S.*, 398 U.S. 333 (1970) ……………………………………...……. 16, 21

*Zelnick v. Fashion Inst. Tech.*, 464 F.3d 217 (2d Cir. 2006) ………………………………… 8

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

**Statutes**

9 CRR-NY 466.11 …………………………………………………………….… 12

Fed.R.Civ.P. 12(b) …………………………………………………………….... 4

N.Y. Exec. Law § 296 …………………………………………………….….... 5, 10, 11

N.Y. Exec. Law § 300 …………………………………………………………… 5

N.Y.C. Admin. Code § 8-102…………………………………………………….... 24

N.Y.C. Admin. Code § 8-107 ……………………………………………..…… 5, 10, 11

N.Y.C. Admin. Code § 8-130 …………………………………………………... 5, 6, 25

Restoration Act § 1 …………………………………………………………….... 5

**Other Authorities**

Report of the Governmental Affairs Division, Comm. on Civil Rights ……………………… 25

**PRELIMINARY STATEMENT**

Plaintiff Salvatore Maita, former Firefighter for the New York City Fire Department ("FDNY"), asserts his fundamental right to exercise sincerely held religious beliefs in opposition to the COVID-19 vaccine mandated by the City of New York. This lawsuit hinges on the central issue of whether the government may lawfully discredit religious beliefs that are personalized, not institutionally endorsed, or rooted in minority interpretations of faith. In denying Plaintiff's request, the City imposed two constitutionally impermissible tests: a "centrality" test, which deemed Plaintiff's beliefs invalid because they were not shared by all Catholics or the Pope, and a "consistency" test, which applied only to abortion-based objections to the COVID-19 vaccine and presumed insincerity unless the applicant proactively objected to unrelated medical products the City unilaterally deemed similar, requiring applicants, without notice, to disavow the use of other medications or vaccines that the City (not the applicant) associated with abortion. Applicants were not told this standard existed, were never asked to address it, and yet were penalized for unknowingly failing to satisfy it. Plaintiff has presented plausible facts supporting viable claims under the Free Exercise and Establishment Clauses of the First Amendment, as well as the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"), contrary to Defendant's contention that the complaint fails to state a claim.

**STATEMENT OF FACTS**

Salvatore Maita was employed by the FDNY as a Firefighter since 2007. (ECF Doc. No. 11, Am. Compl. ¶18). Maita is a devout Roman Catholic who adheres to the original teachings of the Council of Trent, which precede the Second Vatican Council of 1962. (Am. Compl. ¶ 20). He believes that that the liturgical changes made at that time eroded faith in the real presence of

1

Jesus Christ in the Eucharist and attempted to subserviate the Catholic Church among other Christian denominations. (*Id.*) Maita is not in communion with Pope Francis because Plaintiff conforms to the teachings of the Council of Trent. (*Id.*) He refuses the COVID-19 vaccine because all available COVID-19 vaccines were developed using aborted fetal cell lines. (Am. Compl. ¶22). He believes that abortion is a grave sin, and that receiving the COVID-19 vaccine would make him complicit in the sin of abortion. (*Id.*)

On October 20, 2021, the City mandated COVID-19 vaccination for all municipal employees, including FDNY personnel, with explicit provisions for reasonable accommodations. (Am. Compl. ¶¶ 31, 33). The City also promulgated its own written policy providing that "[a] sincerely held religious, moral, or ethical belief may be a basis for a religious accommodation." (Am. Compl. ¶¶ 36-37). This policy also provided that the alternative to vaccination allowed which would not cause an undue hardship if an employee is granted a reasonable accommodation would be submission of a weekly negative test result. (Am. Compl. ¶38).

On November 1, 2021, Maita was placed on Leave Without Pay ("LWOP") due to non-compliance with the Vaccine Mandate. (Am. Compl. ¶43). On November 5, 2021, Maita submitted his request for a religious accommodation to the Mandate, using the FDNY's provided form, identifying himself as "Roman Catholic" and including a statement that the basis for his religious accommodation request was his opposition to abortion and the use of aborted fetal cell lines in the development and production of the COVID-19 vaccine. (Am. Compl. ¶¶ 44, 45, 48). Maita requested the accommodation of submitting a weekly PCR test. (Am. Compl. ¶ 47).

Without communicating with him, the FDNY denied Maita's accommodation request with a boilerplate denial that stated: "The asserted basis for the accommodation is insufficient to grant the requested accommodation in light of the potential undue hardship to the Department."

2

(Am. Compl. ¶¶ 49, 50, 52, 53). On February 11, 2022, FDNY sent Plaintiff a termination notice, stating that because of his "failure to comply with the New York City Health Commissioner's Order requiring vaccination of all City of New York employees", he was "terminated, effective February 11, 2022." (Am. Compl. ¶127).

Maita never stood a chance at receiving a reasonable accommodation. The City promulgated its policies, procedures, and standards to use while evaluating and deciding religious accommodation requests to the Vaccine Mandate through the Department of Citywide Administrative Services ("DCAS") – who instructed the various City agencies including the FDNY. (Am. Compl. ¶¶ 61-62). Pursuant to these policies, religious accommodation requests were evaluated by assessing whether the employee's beliefs aligned with formal religious leadership or doctrine. (Am. Compl. ¶¶79–80, 82–84, 91–95.) And individualized religious objections—such as Plaintiff's Catholic-based objection to vaccines derived from aborted fetal cell lines—were rejected because they did not match the public statements of Pope Francis or the Vatican. (Am. Compl. ¶¶79–80, 82–84, 91–95.)

The City also maintained an unconstitutional "consistency test" policy under which religious objections to the COVID-19 vaccine based on its development or testing using aborted fetal cell lines were deemed invalid unless the applicant also explicitly objected to other medical products—such as over-the-counter medications or vaccines—that the City unilaterally deemed similar. (Am. Compl. ¶¶96-105). Without ever instructing applicants, including Plaintiff, to disclose their use of these other products, or conducting an individualized assessment of their beliefs or knowledge, the City presumed acceptance of such products and used that presumed acceptance to conclude that the applicant's religious objection was insincere. Am. Compl. ¶¶96-105. As a result, Plaintiff was denied a religious accommodation pursuant to this constitutionally

3

flawed policy. (Am. Compl. ¶¶96-105).

The City denied Maita's request based on their unilateral determination regarding the "religious necessity" of refusing the COVID-19. (Am. Compl. ¶213). Because the City did not believe that Maita's rejection of vaccination was a "required" practice by his religious institution, his beliefs were deemed merely "personal", (Am. Compl. ¶¶ 84, 198), and the City refused to recognize Maita's beliefs as religious. (Am. Compl. ¶¶ 82-83). The City illegitimized Maita's individualized religious practices because they were not mandated by an established, organized religion. (Am. Compl. ¶95). This in turn created preferential treatment for religious sects that expressly rejected vaccination. (Am. Compl. ¶ 208, 212).

This is not a situation where an employer did not grant any accommodations based on a safety analysis. The City granted reasonable accommodations – both medical and religious – to FDNY employees, including active duty firefighters that responded to fires, slept in the firehouse with their colleagues, and responded to medical emergencies. (Am. Compl. ¶ 280-282). Some FDNY employees were permitted to continue to submit weekly testing throughout the Vaccine Mandate was lifted for secular reasons. (Am. Compl. ¶41).

The City terminated Maita over a temporary mandate. (Am. Compl. ¶ 163). On February 9, 2023, the City ended the Vaccine Mandate. (Am. Compl. ¶ 162). Maita sought reinstatement to his former position but the FDNY would not reinstate him unless he waived her rights to all backpay from the time she was wrongfully terminated. (Am. Compl. ¶¶ 164-168).

## STANDARD OF LAW

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the Complaint are accepted as true, and all reasonable inferences must be drawn in the Plaintiff's favor. *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir.2007). The

4

Court should not dismiss the Complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). A plaintiff is not required "to plead a *prima facie* case", but to "assert [enough] nonconclusory factual matter ... to nudge [her] claim[ ] across the line from conceivable to plausible to proceed." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208–09 (2d Cir. 2020).

<h2 style="text-align:center"><u>ARGUMENT</u></h2>

**<u>POINT I</u>: Plaintiff States Viable Claims for Failure to Accommodate Pursuant to NYCHRL and NYSHRL.**

Under the NYSHRL, it is unlawful for an employer to impose conditions of employment requiring an employee to violate their sincerely held religious practices, unless the employer can demonstrate, after "a bona fide effort", that accommodation would cause undue hardship. N.Y. Exec. Law § 296(10)(a). Similarly, the NYCHRL prohibits employers from imposing terms that require employees to violate their religious beliefs and mandates reasonable accommodations for religious practices. N.Y.C. Admin. Code § 8–107(3)(a).

Historically, the standards for recovery under the NYSHRL mirrored Title VII. However, a 2019 amendment to the NYSHRL directs courts to construe it liberally to achieve its remedial purposes, irrespective of how comparable federal laws have been interpreted. N.Y. Exec. Law § 300. This amendment aligns the NYSHRL more closely with the NYCHRL, which contains a similarly broad construction mandate. N.Y.C. Admin. Code § 8-130(a).

The NYCHRL imposes "substantially broader" liability on employers than its state counterpart. *Doe v Bloomberg L.P.*, 36 NY3d 450, 462 (2021). Federal and state laws with similar wording serve as "a floor", not a ceiling, for interpreting the NYCHRL. Local Civil Rights Restoration Act of 2005, §1. The NYCHRL commands that "exceptions and

5

exemptions…shall be construed narrowly in order to maximize deterrence of discriminatory conduct". Admin. Code § 8-130 (b).

To make out a prima facie case for religious accommodation, an employee must show: (1) a sincerely held religious belief conflicting with an employment requirement, (2) notice to the employer, and (3) an adverse employment action for failing to meet the conflicting requirement. *Baker v. Home Depot,* 445 F.3d 541, 546 (2d Cir. 2006) (NYSHRL); *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (NYCHRL). Defendant's motion to dismiss challenges the first and third prongs.

### A. Plaintiff's refusal of the COVID-19 vaccine is a religious practice entitled to protection under the NYSHRL and NYCHRL.

Plaintiff's objection to the COVID-19 vaccine is undeniably religious in nature and falls within the protections guaranteed by the Free Exercise Clause of the First Amendment, NYSHRL, and the NYCHRL. Maita is a Roman Catholic who adheres to the traditional teachings of the Church as defined by the Council of Trent and rejects the doctrinal and liturgical changes introduced by the Second Vatican Council. (Am. Compl. ¶20.) As part of these beliefs, he is not in communion with Pope Francis, whom he believes has deviated from the true teachings of the faith. (*Id.*) He regularly attends the Traditional Latin Mass (Tridentine Mass), prays the rosary daily, and participates in weekly Holy Hour devotions. (Am. Compl. ¶21.) Maita believes that life begins at conception and that abortion is a grave sin. He objects to the COVID-19 vaccines because they were developed, tested, or produced using aborted fetal cell lines. (Am. Compl. ¶22.) As such, he refuses to receive the COVID-19 vaccine, believing that doing so would render him complicit in the sin of abortion. (Id.) His beliefs were affirmed by his spiritual advisor, Father Paul Waddel. (Am. Compl. ¶23.) Plaintiff's refusal of the COVID-19 vaccine was based solely on his sincerely held religious beliefs. (Am. Compl. ¶24.). In his accommodation request, he identified his religious

6

beliefs as Roman Catholic and articulated his opposition to abortion and rejection of the COVID vaccines which were developed using aborted fetal cell lines. (Am. Compl. ¶¶44-48.).

The City does not challenge Plaintiff's sincerity; rather, it argues that Plaintiff cannot establish a bona fide religious belief because he did not "plead any other facts regarding how his religious belief opposing abortion impacted his practices with regard to other medical interventions and/or vaccines". Def. Mem. of Law, p. 10-11. But that is not the legal standard. To state a failure-to-accommodate claim under the NYCHRL or NYSHRL, a plaintiff must plead that he (1) holds a sincerely held religious belief, and (2) that the belief conflicts with a specific work requirement. *Baker,* 445 F.3d at 546; *Mihalik*, 715 F.3d at 110. Plaintiff has done exactly that. (Am. Compl. ¶¶20–24).

The City's argument improperly adds a requirement not found in the law: that Plaintiff must also plead consistency with respect to other unrelated products. The law contains no such burden. The Supreme Court has made clear that a religious belief "need not be acceptable, logical, consistent, or comprehensible to others" to merit protection. *Thomas v. Review Bd.*, 450 U.S. 707, 714 (1981). While Plaintiff addresses the City's unconstitutional "consistency test" in Section II below, that framework is irrelevant here: the City cannot deny that Plaintiff's stated religious belief directly conflicts with the vaccine requirement, and no more is required to survive a motion to dismiss. In fact, Plaintiff has gone further than required: he also pleads that he and his wife reject contraceptives on religious grounds because they interfere with God's creation of life. (Am. Compl. ¶22.) But again, this is not necessary under the NYCHRL or NYSHRL. It is enough that Plaintiff objects to the vaccine at issue on sincerely held religious grounds—which he clearly and specifically does.

7

And an analysis of recent decisions demonstrates that religious objections to COVID-19 vaccination based on the vaccines being developed using aborted fetal cell lines is common. *Keene v. City & Cnty. of San Francisco*, 2023 WL 3451687, at *2 (9th Cir. May 15, 2023) (reversing the district court and holding that its conclusion that plaintiff failed to demonstrate a religious conflict with the vaccine mandate was based on a factual error about fetal cell lines and a misunderstanding of the proper failure-to-accommodate inquiry); *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 901 (8th Cir. 2024); *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 342 n. 4 (5th Cir. 2022); *Does v. Mills*, 142 S. Ct. 17, 18-19 (2021, Gorsuch, J., dissenting); *Dr. A v. Hochul*, 142 S. Ct. 552, 553 (2021, Gorsuch, J., dissenting); *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 272-273 (2021), *opn clarified* 17 F.4th 368 (2d Cir. 2021); *Together Emps. v. Mass Gen. Brigham Inc.*, 19 F.4th 1, 4-6 (1st Cir. 2021); *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1176 n.3 (9th Cir. 2021) ("We may not ... question the legitimacy of [Appellants'] religious beliefs regarding COVID-19 vaccinations."); *Kane v. de Blasio*, 575 F. Supp. 3d 435, 442 (S.D.N.Y. 2021); *Ferrelli v. State of N.Y. Unified Court Sys.*, 2022 WL 673863, *3 (N.D.N.Y., Mar. 7, 2022).

B.  **Plaintiff suffered an adverse employment action.**

After refusing to accommodate his religious beliefs, Defendant sent Maita a notice stating that he was being terminated for failure to comply with the Vaccine Mandate, and then Plaintiff was terminated. (Am. Compl. ¶ 127-128). The adverse action followed directly from his refusal to violate his faith. That is sufficient to establish causation. The City's effort to reframe the denial and termination as nondisciplinary is frivolous. *Zelnick v. Fashion Inst. Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) (termination qualifies as adverse employment actions for purposes of Title VII claims); *Bowles v. New York City Transit Auth.*, 285 F. App'x 812, 813 (2d Cir. 2008)

8

(discipline prong of failure to accommodate prima facie case satisfied by "adverse employment action, " which includes "termination of employment").

The district courts have consistently rejected the City's argument that terminating an employee who failed to comply with the Vaccine Mandate does not constitute discipline. "As Judge Furman has commented in rejecting this exact argument, the City's position is 'flat wrong'." *Vasquez v. the City of New York*, No. 22-cv-05068, 2025 WL 1560105 at *3 (E.D.N.Y. June 2, 2025) (citing *Rizzo v. N.Y.C. Dep't of Sanitation*, No. 23-cv-7190, 2024 WL 3274455, at *3 (S.D.N.Y. July 2, 2024).

### C. Defendant's undue hardship arguments are premature, and Defendant cannot meet its burden of proof of undue hardship in any event.

Both the NYCHRL and the NYSHRL place the burden of proof to show undue hardship on the employer. N.Y.C. Admin. Code § 8-107(3)(b); N.Y. Executive Law § 296(10)(a). Accordingly, dismissal on that ground is proper only if Defendant shows some obvious bar to securing relief on the "face of the complaint". *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998). Courts in the Southern and Eastern Districts of New York have consistently denied the City's motions to dismiss failure-to-accommodate claims related to the Vaccine Mandate. *Chinchilla v. New York City Police Dep't*, No. 23 CIV. 8986 (DEH), 2024 WL 3400526, at *10 (S.D.N.Y. July 12, 2024) (denying dismissal where complaint alleged NYPD allowed other employees to test and mask, showing feasibility of accommodation); *Vasquez v. City of New York*, No. 22-CV-05068 (HG) (VMS), 2024 WL 1348702, at *7 (E.D.N.Y. Mar. 30, 2024) (rejecting undue hardship argument where reasonable accommodations were required, and the City failed to show plaintiff could not perform duties safely with accommodation).

In *Rizzo v. New York City Dep't of Sanitation*, No. 23-CV-7190 (JMF), 2024 WL 3274455, at *3 (S.D.N.Y. July 2, 2024), the court denied the City's motion to dismiss based on

9

undue hardship, holding that such an affirmative defense can only be resolved at the pleading stage if the facts clearly establish it on the face of the complaint. The court found that DSNY's own mandate allowed for reasonable accommodations, and DSNY had granted similar accommodations to other employees, including permitting the plaintiff sanitation worker to work with weekly PCR testing while his exemption request was pending. *Id.*

The City cannot meet its burden of proving undue hardship. Undue hardship is defined as "an accommodation requiring significant expense or difficulty (including a significant interference with the safe or efficient operation of the workplace or a violation of a bona fide seniority system)". Admin. Code § 8-107(3)(b); N.Y. Executive Law § 296(10)(d). Defendant cannot prove undue hardship because:

1. Other FDNY firefighters were provided religious accommodations and were allowed to continue working in person while submitting PCR testing in lieu of vaccination. (Am. Compl. ¶¶ 56-57, 141-142, 280-282). These firefighters were permitted to continue working, responding to fires, and sleeping in the firehouse. (*Id.*).

2. The City's own promulgated guidelines provided that weekly PCR testing would not cause undue hardship and/or disruption. (Am. Compl. ¶37-38).

3. The Vaccine Mandate was a temporary measure. (Am. Compl. ¶162-164). The City could have accommodated Maita with paid or unpaid leave until the Vaccine Mandate was lifted in February 9, 2023 instead of terminating him.

Significantly, the City does not deny the allegations in the Complaint that other FDNY firefighters were provided religious accommodations and permitted to work, unvaccinated, in-person or that weekly PCR testing was a feasible accommodation provided to other firefighters.

10

Defendant cannot demonstrate undue hardship on the face of the complaint, where "courts must apply the [undue hardship] test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." *Groff v. DeJoy*, 143 S. Ct. 2279, 2295 (2023)[1] (internal quotations omitted).

Defendant vaguely asserts a "cumulative cost or burden" because "thousands of unvaccinated individual City employees" made accommodation requests but fails to support these claims with any facts. Def. Mem. of Law, Page 13. While "the number of individuals who will need the particular accommodation" is *one factor* to be considered in determining whether the accommodation constitutes an undue *economic* hardship", NYC Admin. Code § 8-107(3)(b)(ii), N.Y. Exec. Law § 296 (10(d)(1)(ii), Defendant never articulates *how* the number of requests would have any economic impact on the FDNY. Nor does Defendant consider the other required factors, identifying what the cost of the accommodation is and considering the degree to which the geographic separateness of the employer's facilities affects undue hardship. NYC Admin. Code § 8-107(3)(b) (i) and (iii); N.Y. Exec. Law § 296 (10(d)(1)(i) and (iii). Defendant, despite bearing the burden, provided no evidence regarding the cumulative impact of accommodations on the FDNY. Their vague reference to statutory factors fails to explain how multiple requests would create undue hardship, whether economically *or in terms of safety*. Any alleged safety concerns would still require an assessment of Maita's specific circumstances, such as how many accommodation requests came from firefighters like Maita or from his specific firehouse which was geographically separate from other firehouses spread across the City, as

---

[1] *Groff* is a Title VII action, however, "interpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of the [NYCHRL], viewing similarly worded provisions of federal and state civil rights laws as *a floor below which the [NYCHRL] cannot fall*…" Local Law No. 85 [2005] of City of NY § 1.

11

required under the geographic separateness factor. If their concern *was* safety (which is unknown since they cite to the *economic* undue hardship factor without explaining what it means), then they would have had to rely on some type of facts that accommodating a certain number of unvaccinated people tipped the balance as to safety[2], which they obviously did not do. They did not provide any explanation, let alone any evidence, as to what the alleged cumulative burden on the employer actually was.

More importantly, under both the NYCHRL and NYSHRL, the employer must "demonstrate that it responded to the employee's request *for a particular accommodation*" and address "the feasibility of that accommodation prior to terminating his employment." *Jacobsen v. New York City Health & Hospitals Corp.*, 22 N.Y.3d 824, 827 (2014) (emphasis added). "[E]mployers (and courts) must make a clear, fact-specific inquiry about each individual's circumstance." *Hosking v Mem. Sloan-Kettering Cancer Ctr.*, 186 AD3d 58, 63 (1st Dept 2020). In Maita's accommodation request, he requested the accommodation of submitting weekly PCR test results. (Am. Compl. ¶ 47). Significantly, the City fails to address why it could not accommodate Maita with weekly PCR testing – his *requested* accommodation, and the accommodation provided to other firefighters. "[T]he NYCHRL presumes all accommodations to be reasonable until proven otherwise". *LeBlanc v. United Parcel Serv.*, No. 11-cv-6983 (KPF), 2014 WL 1407706 at *18 (S.D.N.Y. 2014). In its motion, the City does not even mention weekly PCR testing.  Nor would they be able to demonstrate that weekly PCR testing was unfeasible given their allowance of full-duty firefighters to work in person while testing weekly.

---

[2] If undue hardship is alleged based on a safety concern, "the employer must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective information to ascertain: the nature, duration and severity of the risk; the probability that the potential injury will actually occur, and whether reasonable accommodations, such as modification of policies, practices or procedures, will mitigate the risk." 9 CRR-NY 466.11. None of which are addressed by Defendant.

12

In *N.Y.C. Tr. Auth. v Exec. Dept., Div. of Human Rights*, the Court of Appeals held that Transit Authority violated the NYSHRL by failing to accommodate an employee's religious beliefs where there was no showing by Transit that "a genuine search for reasonable alternatives was undertaken." 89 NY2d 79, 90 (N.Y. 1996). Therefore, it didn't meet its burden of proving undue hardship. *Id.* at 90. Here, the City cannot and does not address any reasonable alternatives to vaccination, not even the very accommodation requested by the Plaintiff – weekly testing – and thus cannot meet its burden either.

**POINT II: Plaintiff States a Viable Free Exercise Claim Under the First Amendment**

Despite the City's arguments, unlike other cases brought by City Workers, *this* case does not present a facial challenge to the City's Vaccine Mandate. Rather, Maita's First Amendment claims challenge the policies and practices the City used to adjudicate religious accommodation requests, which discriminatorily disfavor Catholics and those whose beliefs do not conform to institutional doctrine.

A. **The City unlawfully applied a "centrality" test, dismissing Plaintiff's beliefs because they are not universally held by all Catholics.**

Maita pleaded clear facts showing that he was denied a religious accommodation based on the City's unlawful "centrality" test—dismissing his sincerely held beliefs because they are not universally held by all Catholics and do not align with the public position of the Pope. (Am. Compl. ¶¶79–80, 82–84, 91–95.) Specifically, Plaintiff alleges that the City, through policies promulgated by the Department of Citywide Administrative Services (DCAS), instructed agencies to evaluate religious accommodation requests by assessing whether the employee's beliefs aligned with formal religious leadership or doctrine. (Am. Compl. ¶¶79–80, 82–84, 91–95.) Under this policy, individualized religious objections—such as Plaintiff's Catholic-based objection to vaccines derived from aborted fetal cell lines—were rejected because they did not

13

match the public statements of Pope Francis or the Vatican. This is precisely the policy Plaintiff challenges. (Am. Compl. ¶¶79–80, 82–84, 91–95; *see also Id.* at 65-67, 69, 81, 118)

Ironically, the very Second Circuit cases Defendant cites—*New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319 (2d Cir. Nov. 13, 2024), and *Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021)—support Plaintiff's claim, holding that the same allegations pleaded by Maita, challenging policies that dismiss personal religious beliefs for not aligning with organized religion, sufficiently stated First Amendment violations. While both cases upheld the *facial*[3] validity of the Vaccine Mandate, each also held that the City's policies and procedures for reviewing religious exemptions were unconstitutional *as applied*.

In *New Yorkers for Religious Liberty*, the court reversed dismissal of First Amendment claims by plaintiffs whose accommodation requests were denied for being too "personal" or "idiosyncratic." The Second Circuit held that it is unconstitutional to reject sincerely held religious beliefs simply because they do not align with established doctrine. 125 F.4th at 335. The court emphasized that such evaluations improperly intrude on religious authenticity and violate the Free Exercise Clause. *Id.*

In *Kane*, the court similarly found that while the Vaccine Mandate was facially neutral, the procedures used to evaluate accommodation requests were not, and that they "violated the First Amendment as applied to these Plaintiffs." 19 F.4th at 167. The Second Circuit made it explicitly clear that "[d]enying an individual a religious accommodation based on someone

---

[3] These complaints, brought long before Maita's, did not include specific facts pleaded by Maita regarding general applicability which could have very well altered the determination on the facial validity of the Vaccine Mandate. For example, the City had mutual aid agreements with outside municipalities that did not have vaccine requirements or provided first responders with reasonable accommodations that allowed them to work unvaccinated. (Am. Compl. ¶34). And that due to completely secular reasons (financial), the City allowed City Workers, including FDNY employees to continue working unvaccinated for many months after the Vaccine Mandate was implemented, some of which were permitted to work throughout the entire Mandate without receiving the COVID-19 vaccine (or being granted an accommodation). (Am. Compl. ¶41). Permanent accommodations were granted for employees who were unable to mount an immune response to COVID-19. (Am. Compl. ¶39).

14

else's publicly expressed religious views — even the leader of her faith —runs afoul of the Supreme Court's teaching that 'it is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, *or the validity of particular litigants' interpretations of those creeds'*." *Kane*, 19 F.4th at 168 (quoting *Hernandez v. Commissioner*, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989)).

Plaintiff's allegations mirror those sustained in both cases. He explicitly pleads that his request was denied under policies that reject personal beliefs for deviating from institutional religious leaders' views. (Am. Compl. ¶¶79–80, 82–84, 91–95.) Indeed, the City has openly embraced this policy. In *Furno v. New York City Police Department*, Index No. 85021/2023 (N.Y. Sup. Ct., Richmond Cnty.), the City denied a Catholic officer's accommodation request because, although he cited fetal cell lines and opposition to abortion, his beliefs were "not based in the very religion to which he allegedly maintains a sincerely held religious belief." *See* NYSCEF Doc. No. 31 at 15–16. The City pointed to public statements by Pope Francis to claim that the officer's beliefs were invalid. *Id*. This is not a hidden or speculative policy—it is a matter of public record.

"Because the free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires, courts are not *permitted* to inquire into the centrality of a professed belief to the adherent's religion." *Fifth Ave. Presbyterian Church v. City of New York,* 293 F.3d 570, 574 (2d Cir. 2002). Such a policy flatly contradicts decades of binding Supreme Court precedent, which prohibits the government from evaluating the centrality of a belief to a faith or comparing an individual's sincerity to a religious hierarchy. *See Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 887 (1990) ("Judging the centrality of different religious practices is akin to the unacceptable business of evaluating the

15

relative merits of differing religious claims."); *Thomas v. Review Bd.*, 450 U.S. 707, 715-716 (1981) ("It is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith."); *Welsh v. U.S.*, 398 U.S. 333, 343 (1970) (finding that petitioner's beliefs were religious in nature although the church to which he belonged did not teach those beliefs). Here, the City's policy does exactly what the Supreme Court forbids: it makes the legitimacy of a belief contingent on whether the Pope agrees with it. The Free Exercise Clause protects individual conscience, not institutional conformity.

This further reinforces that Maita adequately stated his First Amendment claims. Defendant's policies and practices as alleged in the Complaint here—rejecting Maita's beliefs as too personal and insufficiently connected to Catholic religious doctrine – plausibly violate the Free Exercise Clause, especially at the motion-to-dismiss stage. *See also Sughrim v. New York*, 690 F. Supp. 3d 355, 374 (S.D.N.Y. 2023) (government employer's practice of denying accommodation request based on its own assessment as to whether the religious conduct is a "requirement of an applicant's faith" "plainly runs afoul of the First Amendment").

**B. The City improperly applied a "consistency" test, rejecting Plaintiff's objection based on illusory inconsistencies with other medical choices.**

Maita also properly pleaded facts that demonstrate that Maita was denied based on the City's policy of an unconstitutional "consistency" test[4], which presumed that an objection to the

---

[4] The City openly invokes its unconstitutional consistency test in its own brief. Def. Mem. of Law at p. 10-11 ("Although Plaintiff alleges that he opposed the Vaccine Mandate based on the Covid-19 vaccine's purported use of fetal cell lines in its development, Plaintiff fails to plead any other facts regarding how his religious belief opposing abortion impacted his practices with regard to other medical interventions and/or vaccines. Without more regarding how his religious beliefs impacted his practice as to other medical interventions, opposing the alleged use of aborted fetal cell lines in the development of Covid-19, alone, does not sufficiently establish that his religious beliefs conflicted with the Vaccine Mandate.") *See also* Def. Mem. of Law at 4 ("Other than citing to his opposition to the Covid-19 vaccine, the Amended Complaint does not allege how Plaintiff's religious [beliefs] impact his practice with regard to any other medical interventions or vaccines."). This assertion is factually incorrect—for example, Plaintiff expressly alleges that he and his wife reject contraceptives as sinful interference with God's creation of life

16

COVID-19 vaccine was insincere unless the applicant also objected to other medical products—such as over-the-counter drugs or vaccines—that the City unilaterally deemed similar. (Am. Compl. ¶¶96–105.) Applicants were never instructed to disclose their use of such products, yet the City made automatic negative assumptions without individualized inquiry. (*Id.*) As a result, Plaintiff was denied based on this constitutionally flawed policy. (*Id.*) This undisclosed standard was applied to applicants who objected on abortion-related grounds, imposing a heightened burden on a specific class of religious objectors without notice or justification. (Am. Compl. ¶¶94, 96, 98). The City's policy thus reflects an impermissible bias against certain religious beliefs and creates a secret hurdle applicable only to disfavored views.

Moreover, black and white consistency tests, like the City applied, are no lawful basis for denial. Such a policy violates settled Supreme Court precedent: "[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit [religious] protection." *Thomas*, 450 U.S. at 714. In *Thomas,* the Supreme Court rejected a similar attempt by the state to discredit a claimant's religious belief based on perceived inconsistency. *Id.* There, a Jehovah's Witness refused to participate in manufacturing tank turrets but had previously worked on steel used in military applications. *Id.* at 710. The state denied him benefits, claiming his beliefs were inconsistent. *Id.* at 711-712. The Court held that the government may not evaluate the logic or consistency of religious beliefs: "It is not for us to say that the line he drew was an unreasonable one." *Id.* at 715. Likewise, here, the City's presumption that Plaintiff's objection was invalid unless he also rejected unrelated medications is precisely the kind of line-drawing the Free Exercise Clause forbids.

---

(Am. Compl. ¶22)—but more importantly, it confirms that the City presumes religious insincerity based on strict consistency with other medical choices (despite never even asking about any other medical choices), in direct violation of Supreme Court precedent.

17

The Supreme Court reaffirmed this principle in *Burwell v. Hobby Lobby*, rejecting the government's argument that religious objections to only some forms of contraception indicated insincerity. 573 U.S. 682, 725 (2014) ("The Court's narrow function...is to determine whether the line drawn reflects an honest conviction."). In both cases, the Court emphasized that the sincerity of a religious belief is not negated by perceived inconsistencies, and the government cannot substitute its own moral logic for that of the believer.

### C. The City's religious accommodation policies are not neutral or generally applicable and cannot survive strict scrutiny.

The Second Circuit also found the procedures the City used in deciding religious accommodation requests to the Vaccine Mandate were neither generally applicable nor neutral, and did not "survive strict scrutiny". *Kane*, 19 F.4th at 169. In *Kane*, the Second Circuit held that the Vaccine Mandate itself "on its face" was neutral and generally applicable, but not so as applied to the plaintiffs who were denied religious accommodations under procedures that "violated the First Amendment as applied to these Plaintiffs". *Id.* at 166-68.

Because Defendant burdened Maita's religious exercise through policies lacking neutrality and general applicability, Defendant's denial of Maita's religious exemption is subject to strict scrutiny. *Id.* at 169; *Church of the Lukumi Babalu Aye, Inc.v. Hialeah*, 508 U.S. 520, 531-32 (1993); *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021). Neutrality and general applicability are distinct concepts, and therefore challenged conduct could fail the separate test of general application even if it satisfied the neutrality criteria. *Lukumi,* 508 U.S. at 542.

The policies Defendant used to deny Maita's religious accommodation request were not neutral to his religious practices. As stated by the Second Circuit: "We have grave doubts about whether the Accommodation Standards are consistent with this bedrock First Amendment principle. They provide that exemption requests shall be considered for recognized and established

18

religious organizations and that requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature." *Kane*, 19 F.4ᵗʰ at 168.

And the procedures used to deny Maita's accommodation request were also not "generally applicable to all those seeking religious accommodation." *Kane*, 19 F.4th at 169. The Defendant had "substantial discretion over whether to grant those requests." *Id.* at 169; (Am. Compl. ¶177-178). Moreover, the City had mutual aid agreements with outside municipalities that did not have vaccination requirements, as well as volunteer Fire Departments who were not subject to the Vaccine Mandate or any vaccination requirement and were permitted to work unvaccinated. (Am. Comp. ¶ 179-180). In *Bacon v. Woodward*, the Ninth Circuit reinstated a Free Exercise challenge by municipal firefighters against a state vaccine mandate, holding that the mandate was not generally applicable because (like the FDNY) the fire department had mutual aid agreements which allowed unvaccinated personnel from other districts to fill in. 104 F.4th 744, 752 (9th Cir. 2024). "If the secular category of 'firefighters from neighboring departments' is exempt … then the Free Exercise Clause mandates that religious objectors be granted equivalent accommodation." *Id.*

"[N]arrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID." *Tandon v. Newsom*, 593 U.S. 61, 63 (2021). Here, the City allowed other FDNY employees to continue working unvaccinated while engaging in weekly PCR testing. (Am. Compl. ¶¶280-282). These precautions were sufficient to accommodate the religious beliefs that Defendant deemed worthy. *Tandon*, 593 U.S. at 63 (citing *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592

19

U.S. 14, 19 (2020)); (Am. Compl. ¶¶ 56-57).  Defendant cannot show "that public health would be imperiled if less restrictive measures were imposed". *Roman Cath. Diocese*, 592 U.S. at 19. Particularly, where they are implementing those less restrictive measures – i.e., weekly PCR testing – for others. Defendant "cannot survive strict scrutiny because denying religious accommodations based on the criteria outlined in the City's policies, such as whether an applicant's religious leader opposes the vaccine or whether the applicant rejects over-the-counter medication, is not narrowly tailored to serve the government's interest in preventing the spread of COVID-19." *Kane,* 19 F.4th at 169 (2d Cir. 2021). "Put another way, so long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton*, 141 S. Ct. at 1881.

In *Bacon*, the Ninth Circuit found that less restrictive means were available because "'[t]he Mayor, the Fire Chief, and the City could . . . do[ ] what all surrounding fire departments are doing – testing and masking for COVID-19.'" *Bacon*, 104 F.4th at 752-53. Our case is even stronger because Defendant themselves substantiated the efficacy and availability of these same alternatives here. (Am. Compl. ¶¶ 56-57, 280-282). For these reasons, the City cannot even make out a rational basis for denying Maita's accommodation request.

**POINT III: Plaintiff States a Viable Establishment Clause Claim Under the First Amendment**

Plaintiff alleges that the City denied his religious accommodation based in part on the fact that his objection to the COVID-19 vaccine was not "central" to Catholic doctrine and did not align with the Pope's views. (Am. Compl. ¶¶79–85, 90–95.) This policy violates the Establishment Clause by inserting government officials into theological evaluation and favoring institutional religious positions over individual belief.

20

In *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022), the Supreme Court held that Establishment Clause claims must be judged by "reference to historical practices and understandings." *Id.* at 535. While the City invokes this standard to suggest that vaccine mandates are historically accepted, Plaintiff does not challenge the mandate itself. He challenges the City's method of adjudicating religious exemptions, which conditions relief on alignment with majority doctrine—a practice that lacks any historical foundation and would have been anathema to the Founders' understanding of religious liberty. *See Id.* at 535-36; *Larson v. Valente*, 456 U.S. 228, 244 (1982) (recounting the history before and after the Revolution and abolition of denominational establishments); *Welsh v. U.S.*, 398 U.S. 333, 343 (1970) (finding that petitioner's beliefs were religious in nature although the church to which he belonged did not teach those beliefs); *Thomas v. Rev. Bd. Of Ind. Emp't Sec. Div.*, 450 U.S. 707, 715 (1981) (disagreement among sect workers as to whether their religion made it sinful to work in an armaments factory irrelevant to whether belief was religious in nature because "[t]he guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect."); *Frazee v. Illinois Dep:t of Emp. Sec.*, 489 US 829, 834 (1989) (rejecting the requirement that "one must be responding to the commands of a particular religious organization" to have one's beliefs receive legal protection). "The Fathers of the Constitution were not unaware of the varied and extreme views of religious sects, of the violence of disagreement among them, and of the lack of any one religious creed on which all men would agree. They fashioned a charter of government which envisaged the widest possible toleration of conflicting views." *United States v. Ballard*, 322 U.S. 78, 87 (1944).

The City also misplaces reliance on *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 111–12 (2d Cir. 2024), arguing that Plaintiff fails to allege coercion into religious activity. But coercion is not the only Establishment Clause trigger. "The clearest command of the Establishment Clause

21

is that one religious denomination cannot be officially preferred over another." *Larson*, 456 U.S. at 244. The Clause clearly prohibits government endorsement of certain religious views, denominational favoritism, and entanglement in theological questions—each of which Plaintiff has plausibly alleged here.

This case is about government-imposed religious filtering—requiring applicants to demonstrate that their beliefs are "central" to their religion or consistent with institutional authorities like the Pope in order to qualify for an exemption. That is precisely the kind of conduct the Eastern District condemned in *Sherr v. Northport-East Northport Union Free School District*, 672 F. Supp. 81 (E.D.N.Y. 1987), which struck down a New York statute limiting vaccine exemptions to members of recognized religious organizations. The court held that this policy was "entangling government with religion by mandating official governmental recognition of certain religious denominations and impedes the free exercise of religion by individuals who oppose inoculations on religious grounds but do not belong to any 'state approved' religious group." *Id.* at 98. This principle applies with even greater force where, as here, the government's preference is unwritten and undisclosed, creating a hidden barrier based on perceived denominational legitimacy.

This principle has deep constitutional roots. In *Larson v. Valente*, 456 U.S. 228, 244–46 (1982), the Supreme Court invalidated a statute that extended regulatory exemptions only to religious organizations receiving more than half of their contributions from members—effectively favoring well-established denominations over less conventional ones. The Court held that such a law "clearly grants denominational preferences" and violates the "clearest command of the Establishment Clause... that one religious denomination cannot be officially preferred over another." *Id.* at 244, 246. The City's policy of denying accommodations unless a claimant's beliefs

22

are aligned with a recognized religious hierarchy reflects the very denominational favoritism and theological entanglement the Constitution forbids. (Am. Compl. ¶204-212). By requiring religious objections to align with the Pope's public position on the COVID-19 vaccine, the City has effectively taken sides in an internal doctrinal debate among Catholics about the moral acceptability of the vaccine. *See Commack Self-Serv. Kosher Meats, Inc. v. Weiss*, 294 F.3d 415, 426 (2d Cir. 2002) ("because the challenged laws interpret "kosher" as synonymous with the views of one branch, those of Orthodox Judaism, the State has effectively aligned itself with one side of an internal debate within Judaism").

In *United States v. Seeger*, the Court held that government cannot "classify different religious beliefs, exempting some and excluding others." 380 U.S. 163, 176 (1965). The task is not to evaluate whether a belief aligns with mainstream doctrine, but only whether it is sincerely held and religious in nature. *See also United States v. Ballard*, 322 U.S. 78, 87 (1944) ("The First Amendment does not select any one group or any one type of religion for preferred treatment."); *Fowler v. Rhode Island*, 345 U.S. 67 (1953) (invalidating a city policy that permitted Catholic and Protestant services in a public park but excluded Jehovah's Witnesses).

The Establishment Clause forbids the government from adopting policies that reward religious majorities while disfavoring dissenters. That is exactly what Plaintiff alleges here: a policy that grants religious accommodations only to those whose beliefs match institutional doctrine in alignment with whoever the City deems to be an applicant's religious leader, while rejecting those—like Plaintiff—whose beliefs are sincerely held but not institutionally endorsed. (Am. Compl. ¶ 212, 208) (The City recognized Christian Scientists and Jehovah's Witnesses as worthy of religious exemptions). That is not neutrality. It is unconstitutional preference.

23

**POINT IV:  Plaintiff States a Viable Failure to Engage in a Cooperative Dialogue Claim Under the NYCHRL**

The City claims that it engaged in a cooperative dialogue because "Plaintiff was informed of how to apply for a religious accommodation to the Vaccine Mandate and he, in fact, applied for an exemption and included a statement in support". Def. Mem. of Law, p. 15.  The state court cases cited by Defendant still provided that the City "further engaged" the employee in some manner beyond a mere denial letter. *Matter of Marsteller v. City of NY*, 217 A.D.3d 543, 545 (1st Dep't 2023).

Accepting a boilerplate denial letter that stated only the "potential" for undue hardship as satisfying the cooperative dialogue requirement contradicts the NYCHRL's clear language. "The statutory text is the clearest indicator of legislative intent and the words should be given their natural and obvious meaning." *Matter of Mental Hygiene Legal Serv. v Daniels*, 33 NY3d 44, 67 (N.Y. 2019). Cooperative dialogue is unambiguously defined in the NYCHRL as a "good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity." N.Y.C. Admin. Code § 8-102. It is undisputed that none of this information was discussed with Maita. And the NYCHRL explicitly requires a cooperative dialogue *before* any denial can be made. N.Y.C. Admin. Code § 8-107 (28)(e). Here, all Maita received was a denial. The City's conduct does not satisfy its obligation under NYCHRL. *Goldman v Sol Goldman Invs. LLC*, 2022 US Dist LEXIS 175353, at *12-13 (SDNY Sep. 27, 2022) (finding no cooperative dialogue where Defendants failed to address Plaintiff's specific accommodation needs, relying instead on general COVID-19 measures, and did not discuss alternative accommodations); *Heiden v NY City Health & Hosps. Corp.*, 2023 US Dist LEXIS 5583, at *111

24

(SDNY Jan. 11, 2023) (finding no cooperative dialogue where interactions were limited to Plaintiff's request submission, form submissions, and notification of denial, with no discussion of his disability, potential accommodations, or challenges for the employer).

The Council's legislative intent could not have been clearer. The Committee on Civil Rights stated that the law was necessary "to clarify the reasonable accommodation requirement by expressly requiring, as a part of the reasonable accommodation process, that covered entities engage in a cooperative dialogue." *See* Report of the Governmental Affairs Division, Comm. on Civil Rights, at p. 4731. And the NYCHRL requires that it be "construed liberally" and that exemptions "be construed narrowly." Admin. Code §§ 8-130(a), (b). Whether a cooperative dialogue occurred is a fact-intensive inquiry inappropriate for resolution on a motion to dismiss, particularly where Maita pleads the process was entirely absent.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's motion in its entirety.

Dated: Staten Island, New York          Respectfully submitted,
       June 24, 2025

_____

Christina Martinez, Esq.
Martinez & Loiacono PLLC
245 Bricktown Way, Suite J
Staten Island NY 10309
T: (347) 215-4543
ChristinaMartinezEsq@gmail.com

*Attorneys for Plaintiff*

25