UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
SALVATORE MAITA,

                        Plaintiff,

        -against-

CITY OF NEW YORK,

                       Defendant.
-------------------------------------------------------------- x

**REPORT AND RECOMMENDATION**

24 Civ. 6559 (DG) (VMS)

**Vera M. Scanlon, United States Magistrate Judge:**

Before the Court is motion of Defendant City of New York ("Defendant") to dismiss the amended complaint filed by Plaintiff Salvatore Maita ("Plaintiff"), see generally ECF No. 11, which asserts the following claims in relation to the termination of Plaintiff's employment with the Fire Department of the City of New York (the "FDNY"): (1) violation of the Free Exercise Clause of the First Amendment to the United States Constitution, U.S. Const. amend. I (the "Free Exercise Clause"); (2) violation of the Establishment Clause of the First Amendment to the United States Constitution, U.S. Const. amend. I (the "Establishment Clause"); (3) failure to accommodate in violation of the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq. (the "NYCHRL"); (4) failure to accommodate in violation of the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq. (the "NYSHRL"); and (5) failure to engage in a cooperative dialogue in violation of the NYCHRL. See generally ECF Nos. 24-24-3. Plaintiff opposed the motion. See generally ECF No. 25. Defendant replied. See generally ECF No. 26. Defendant additionally submitted a notice of supplemental authority. See generally ECF Nos. 27-27-2. For the reasons stated herein, the Court respectfully recommends that Defendant's motion be denied.

1

## I.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert the defense of failure to state a claim upon which relief can be granted by motion.  Courts addressing motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the" plaintiff.  New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo, 122 F.4th 28, 39 (2d Cir. 2024) (citation omitted), cert. denied sub nom., BDO USA, LLP v. New England Carpenters Guaranteed Annuity & Pension Funds, No. 24-1151, 2025 WL 2824451 (S. Ct. Oct. 6, 2025).  A complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Sierra Club v. Con-Strux, LLC, 911 F.3d 85, 88 (2d Cir. 2018) (citation & quotations omitted).  Nonetheless, courts "are not required to accept as true allegations that are wholly conclusory," Walker v. Senecal, 130 F.4th 291, 297 (2d Cir. 2025) (citation & quotations omitted), such that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Singh v. Deloitte LLP, 123 F.4th 88, 93 (2d Cir. 2024) (citation & quotations omitted).

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Religious Beliefs

Plaintiff is Roman Catholic, "adheres to the original teachings of the Catholic Church, which precede the Second Vatican Council of 1962," and "believes that the liturgical changes made at that time eroded faith in the real presence of Jesus Christ in the Eucharist and attempted to subserviate the Catholic Church among other Christian denominations," such that "Plaintiff is not in communion with Pope Francis because Plaintiff conforms to the teachings of the Council of Trent."  ECF No. 11 ¶ 20.  He "attends a Traditional Latin Mass, called a Tridentine Mass,

2

between one and three times per week . . . at Annunciation Church in Crestwood, New York, Immaculate Conception Church in Sleepy Hollow, New York, and the Parish of St. Theresa of the Infant Jesus in Briarcliff Manor, New York." Id. ¶ 21. He also "prays rosary daily and attends the Holy Hour during the week." Id. Plaintiff "believes that abortion is [a] grave sin" and "refuses to support [it] in any way," in view of his belief "that life is a gift from God[,] which begins at conception." Id. ¶ 22. In furtherance of this belief, "Plaintiff and his wife reject the use of contraceptives because Plaintiff believes that the creation of life is God's domain, and that the use of manmade products which interfere in God's creation of life is a sin." Id.

**B.      The COVID-19 Pandemic And The Vaccination Mandate**

COVID-19 began to circulate in New York City "[i]n early 2020." Id. ¶ 28. Then, "[o]n October 20, 2021, the New York City Commissioner of Health and Mental Hygiene issued the City Worker COVID-19 Vaccine Mandate, an Order requiring all City Workers to receive a COVID-19 vaccine by October 29, 2021" (the "Vaccination Mandate"), which "provides for reasonable accommodations." Id. ¶ 31 (footnote omitted). Neither FDNY nor Defendant "collectively bargain[ed] with Plaintiff's Union, the Uniformed Firefighters Association, before implementing or enforcing the Vaccine Mandate." Id. ¶ 32.

Defendant "promulgated a written policy regarding the implementation of the Vaccine Mandate and the reasonable accommodation process," which provided that "[a] sincerely held religious, moral, or ethical belief may be a basis for a religious accommodation" and "that the alternative to vaccination[,] which would not cause an undue hardship if an employee is granted a reasonable accommodation[,] would be submission of a weekly negative test result." Id. ¶¶ 36-

3

38 (quotations omitted).[1]  During the pendency of the reasonable accommodation requests, which were handled by "the FDNY General Law Unit," the policy provided for the requesting employees to "continue working and submitting weekly negative test results."  Id. ¶¶ 40, 42.  Because of "administrative constraints and backlog, thousands of City employees, including many FDNY employees (and FDNY firefighters), continued working unvaccinated for many months after the Vaccine Mandate was implemented," some of whom "were never placed on LWOP [or] . . . terminated, and instead continued to submit to weekly testing until the Vaccine Mandate was eventually lifted."  Id. ¶ 41.

Defendant granted approximately 105 religious and medical accommodations to other employees of the FDNY, including "active-duty firefighters," as of January 11, 2022, including at least thirty medical accommodations and at least six religious accommodations, and permitted them "to submit to weekly PCR testing" in lieu of receiving the COVID-19 vaccine, such that providing this accommodation was not an undue hardship, particularly given that only the initial dose was required, that "[t]he COVID-19 vaccine does not cause prevention or [sic] transmission of the COVID-19 virus," and that "vaccinated and unvaccinated people infected with COVID-19" had "similar viral loads."  Id. ¶¶ 129-131, 135, 140-41, 158-61.  Employees of the New York City Police Department were similarly accommodated.  See id. ¶ 143.  Further, the FDNY's "Buckslip and Memo" outline procedures related to the Vaccination Mandate, including that "[e]mployees who are awaiting determination on a reasonable accommodation request submitted on or before October 27 . . . will be required to submit to weekly testing" in lieu of receiving the COVID-19 vaccine.  Id. ¶¶ 132-34 (quotations omitted).  Medical accommodations were granted

---

[1] Such policy also provided for temporary and permanent medical accommodations.  See id. ¶ 39.

"on more favorable terms than religious accommodations . . . [,] without considering any undue hardship."  Id. ¶ 54.

Defendant "had mutual aid agreements with outside municipalities that did not have vaccination requirements and/or provided first responders to work unvaccinated with reasonable accommodation" and "also had volunteer Fire Departments who were not subject to the Vaccine Mandate or any vaccination requirement," such that "[t]he volunteer firefighters and personnel were permitted to work unvaccinated."  Id. ¶¶ 34-35.

The requests were decided by the FDNY's General Law Unit, which "did not have experience deciding reasonable accommodations."  Id. ¶¶ 58-60.  The reviewers "had total discretion" over the grant or denial of requests; they sometimes "strictly adhered to the standards, policies and procedures implemented by the City," but, at other times, they ignored them. Id. ¶¶ 71-73.  In doing so, the FDNY's General Law Unit used Defendant's standards, policies and procedures, which "disfavored Catholics," and which "provided that there was no valid basis for a Catholic to refuse the COVID-19 vaccine," including "an opposition to abortion," warranting denial of such requests, given that Defendant looked to "publicly expressed religious views" of faith leaders.  Id. ¶¶ 61-70.

### C.    Plaintiff's Employment With The FDNY

Plaintiff began his employment as a firefighter with the FDNY on March 7, 2004, at which time vaccination was not a condition of his employment. See id. ¶¶ 18, 25.  Plaintiff's FDNY record "was without blemish," and "[a]t no time during Plaintiff's employment with the FDNY was he ever suspended or found to be insubordinate." Id. ¶¶ 26-27.

5

Plaintiff worked during "the COVID-19 pandemic, in person, for over eighteen months." Id. ¶ 30.  On November 1, 2021, Plaintiff was put "on Leave Without Pay ('LWOP') due to noncompliance with the COVID-19 Vaccine Mandate." Id. ¶ 43.

Then, "[o]n November 5, 2021, Plaintiff filed a request for [a] religious accommodation based on his sincerely held religious beliefs, which included a form entitled 'Request for a Reasonable Accommodation for Religious Observances, Practices, or Beliefs' provided by the FDNY." Id. ¶ 44.  On his form, Plaintiff "identified his religion as Roman Catholic" and "his work position as a Firefighter and his work location at Ladder 41." Id. ¶¶ 45-46.  He "requested the alternative accommodation of weekly PCR testing" and "articulated the basis for his religious accommodation request in his request form, citing his strong opposition to the use of stem cells and abortion-related products in the development and production of COVID-19 vaccines." Id. ¶¶ 47-48.

On December 1, 2021, the "FDNY denied Plaintiff's request for a religious accommodation to the Vaccine Mandate" stating, "in pertinent part," that "[t]he asserted basis for the accommodation is insufficient to grant the requested accommodation in light of the potential undue hardship to the Department." Id. ¶ 49.  This denial was "boilerplate" and received by "all FDNY employees who were denied religious accommodations. Id. ¶ 50. Plaintiff's request was denied "because his objection to the COVID-19 vaccination was based upon that the vaccination was produced, researched, manufactured, and/or tested using aborted fetal cell lines," and Defendant "refused to acknowledge" such an objection because it "considered these beliefs to be 'inaccurate'" or the connection too remote, such that Defendant instructed its agencies to deny such requests. Id. ¶¶ 74-77, 89.  Plaintiff's request was further actually denied because Plaintiff "identifies as a Catholic," as Defendant presumed that

6

"objections were invalid if their religious leaders did not officially oppose the vaccine," such as the Pope, and if "other Catholics accepted the COVID-19 vaccine." Id. ¶¶ 79-80, 82-83. Defendant further presumed that applicants used other products that Defendant "deemed to have been developed or tested in similar ways," including "independent, post-production testing," "without even asking the applicant about any other products." Id. ¶¶ 96-97, 101.  Defendant did not inquire into the sincerity of Plaintiff's religious beliefs and, instead, "appl[ied] a blanket standard that presumed such beliefs to be insincere or invalid based on the City's view of the connection between the vaccine and abortion." Id. ¶ 86.

In denying the request, "[t]he FDNY erroneously considered whether an accommodation presented an undue hardship on FDNY operations using the 'more than a de minimis' standard" and "did not communicate with Plaintiff regarding his request for [a] religious accommodation before issuing this denial," in accordance with its policy "to deny accommodation requests without engaging in any cooperative dialogue where they unilaterally deemed further information would not change the outcome of an accommodation request." Id. ¶¶ 51-53. Defendant further "failed to consider any accommodations, or less restrictive means of reducing the spread of COVID-19, outside of vaccinations," despite Defendant's guidance, "Managing the Office in the Age of COVID-19," which set forth risk-mitigation and risk-reduction strategies, including ventilation, cleaning and disinfection, masking and health screenings. Id. ¶¶ 146-52. The FDNY also "promulgated an Equal Employment Opportunity Policy that listed job reassignments and lateral transfers as examples of ways to accommodate an employee's religious observance, practice, or belief," but "Defendant did not consider a temporary job reassignment or lateral transfer as a less restrictive way of accommodating Plaintiff's religious practices,"

including temporary "Light Duty" or an "offline" position "outside of the firehouse." Id. ¶¶ 153-56.

The FDNY sent a termination notice to Plaintiff on February 11, 2022, citing his failure to comply with the Vaccination Mandate, and Plaintiff's employment was terminated on the same date. See id. ¶¶ 127-28.

On or about February 9, 2023, the Vaccination Mandate was amended such that it "no longer requir[ed] exclusion from the workplace for City Workers who do not provide proof of COVID-19 vaccination." Id. ¶ 162. Then, "[o]n February 10, 2023, Plaintiff contacted the FDNY Chief of Personnel to request reinstatement to his former position due to the rescinding of the Vaccine Mandate," and "Plaintiff submitted his reinstatement forms on April 15, 2023," within a few days of receipt." Id. ¶¶ 164-65. "On April 17, 2023, the FDNY informed Plaintiff by e-mail that, in order to process Plaintiff's request for reinstatement, Plaintiff would have to sign a waiver waiving his right to all backpay from the time he was placed on Leave Without Pay," which Plaintiff declined. Id. ¶ 166. Plaintiff resubmitted his reinstatement forms following a June 6, 2023, request of "the FDNY Chief of Personnel," but Plaintiff has not received any subsequent correspondence from the FDNY. Id. ¶¶ 167-68.

## III. DISCUSSION

The Court discusses each of Plaintiff's claims in turn and, for the reasons discussed below, respectfully recommends that the District Court deny Defendant's motion.

8

**A.      Free Exercise Clause And Establishment Clause Claims**[2]

For the reasons discussed below, the Court respectfully recommends that Defendant's motion as to the Free Exercise Clause and the Establishment Clause claims be denied.

The Free Exercise Clause provides that "Congress shall make no law . . . prohibiting the free exercise" of religion, which "guarantee is incorporated against the states via the Fourteenth Amendment." New Yorkers for Religious Liberty, Inc. v. City of New York, 125 F.4th 319, 330 (2d Cir. 2025) (citations & quotations omitted), cert. denied sub nom., Kane v. New York, NY, No. 25-126, 2025 WL 3620461 (S. Ct. Dec. 15, 2025).  The Free Exercise Clause protects, "first and foremost, the right to believe and profess whatever religious doctrine one desires" and "thus protects an individual's private right to a religious belief, as well as the performance of (or abstention from) physical acts that constitute the free exercise of religion." Id. (citations & quotations omitted).  The Establishment Clause provides that "Congress shall make no law respecting an establishment of religion," which "guarantee is incorporated against the states via the Fourteenth Amendment." Id. (citations & quotations omitted).  It "prevents the enactment of laws that have the purpose or effect of advancing or inhibiting religion," including "[l]aws that grant[] a denominational preference by preferring one religion over another." Id. (citations & quotations omitted).  The Second Circuit has determined that a plaintiff who pleads that his reasonable accommodation request was denied because it "reflected her purely personal religious practices," as opposed to those "for recognized and established religious organizations, . . . could present a First Amendment problem" pursuant to the Free Exercise Clause and the Establishment Clause. Id. at 334 (denying the motion to dismiss on that basis (citation & quotations omitted)).

---

[2] Plaintiff clarified in his memorandum of law that he is not making a facial challenge to Defendant's COVID-19 vaccination requirement for employees.  See ECF No. 25 at 20.

The Court respectfully recommends that Defendant's motion be denied as to the Free Exercise Clause and Establishment Clause claims.  Assuming arguendo that rational basis review applies to Plaintiff's claims, see id. at 333 (applying rational basis review to the motion to dismiss the plaintiffs' as-applied First Amendment challenges "because [the p]laintiffs have not established, at this stage, that they are likely to succeed in showing that the Vaccine Mandate [wa]s not neutral or generally applicable on its face" (citation & quotations omitted)),[3] Plaintiff has sufficiently alleged violations of the Free Exercise Clause and the Establishment Clause.

Plaintiff's allegations fit squarely within the framework of those claims that that survived a motion to dismiss in New Yorkers for Religious Liberty, 125 F.4th 319, 330 (2d Cir. 2025) (citations & quotations omitted), cert. denied sub nom., Kane v. New York, NY, No. 25-126, 2025 WL 3620461 (S. Ct. Dec. 15, 2025).  In New Yorkers for Religious Liberty, the Second Circuit found that a plaintiff had sufficiently pleaded First Amendment claims for being "was wrongfully denied a religious accommodation," when "the documents [she] . . . submitted to the Citywide Panel describe a religious objection to the vaccine because it is a product of development using fetal cell lines and a 'differing substance[]' that she may not ingest consistent with her faith" and when she alleged "that the Citywide Panel rejected her appeal because it character[ized] [her] . . . receiving guidance from the Holy Spirit as . . . allow[ing] [her] . . . to follow individualized guidance, and thus concluded that [her] beliefs were not religious in nature," because, "[w]hile such a conclusion could indeed be proper and constitutional if the Citywide Panel had a basis for reaching it, [her] . . . allegations support the plausible inference

---

[3] Given that the Court is recommending denial of Defendant's motion as to the Free Exercise Clause and Establishment Clause claims on this basis, the Court need not resolve, on this motion, whether strict scrutiny applies to these claims pursuant to Kane v. DeBlasio, 19 F.4th 152 (2d Cir. 2019).

that the Panel denied her request solely on the basis of its characterization of her religious objection as too idiosyncratic rather than as not sincerely held or non-religious in nature." Id. at 335 (citations & quotations omitted).

As noted above, Plaintiff alleges that his religious accommodation request "identified his religion as Roman Catholic" and "his work position as a Firefighter and his work location at Ladder 41"; that he "requested the alternative accommodation of weekly PCR testing"; that he "articulated the basis for his religious accommodation request in his request form, citing his strong opposition to the use of stem cells and abortion-related products in the development and production of COVID-19 vaccines." ECF No. 11 ¶¶ 45-48. Plaintiff then alleges that his request was denied with a "boilerplate" denial received by "all FDNY employees who were denied religious accommodations. Id. ¶ 50. Plaintiff alleges that his request was actually denied "because his objection to the COVID-19 vaccination was based upon that the vaccination was produced, researched, manufactured, and/or tested using aborted fetal cell lines," and Defendant "refused to acknowledge" such an objection because it "considered these beliefs to be 'inaccurate'" or the connection too remote, such that Defendant instructed its agencies to deny such requests. Id. ¶¶ 74-77, 89. Plaintiff also alleges that his request was actually denied because Plaintiff "identifies as a Catholic," as Defendant presumed that "objections were invalid if their religious leaders did not officially oppose the vaccine," such as the Pope, and if "other Catholics accepted the COVID-19 vaccine," id. ¶¶ 79-80, 82-83, and that Defendant further presumed that applicants used other products that Defendant "deemed to have been developed or tested in similar ways," including "independent, post-production testing," "without even asking the applicant about any other products," id. ¶¶ 96-97, 101.

11

Accordingly, the Court respectfully recommends that Defendant's motion as to the Free Exercise Clause claim and the Establishment Clause claim be denied.

**B.      NYCHRL And NYSHRL Claims For Failure To Accommodate**

For the reasons discussed below, the Court respectfully recommends that Defendant's motion as to the NYCHRL and NYSHRL claims for failure to accommodate be denied.

The NYSHRL provides that

> [i]t shall be an unlawful discriminatory practice for any employer, or an employee or agent thereof, to impose upon a person as a condition of obtaining or retaining employment, including opportunities for promotion, advancement or transfers, any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion, including but not limited to the observance of any particular day or days or any portion thereof as a sabbath or other holy day in accordance with the requirements of his or her religion or the wearing of any attire, clothing, or facial hair in accordance with the requirements of his or her religion, unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's or prospective employee's sincerely held religious observance or practice without undue hardship on the conduct of the employer's business.

N.Y. Exec. L. § 296(10)(a).  An "undue hardship" is "an accommodation requiring significant expense or difficulty (including a significant interference with the safe or efficient operation of the workplace or a violation of a bona fide seniority system)."  N.Y. Exec. L. § 296(10)(d)(1).

The NYCHRL similarly provides that

> [i]t shall be an unlawful discriminatory practice for an employer or an employee or agent thereof to impose upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such person to violate, or forego a practice of, such person's creed or religion, including but not limited to the observance of any particular day or days or any portion thereof as a sabbath or holy day or the observance of any religious custom or usage, and the employer shall make reasonable accommodation to the religious needs of such person.

N.Y.C. Admin. Code § 8-107(3)(a).  A "reasonable accommodation" is an "accommodation to an employee's or prospective employee's religious observance or practice as shall not cause

12

undue hardship in the conduct of the employer's business," as to which "[t]he employer shall have the burden of proof."  N.Y.C. Admin. Code § 8-107(3)(b).  An "undue hardship" is defined as "an accommodation requiring significant expense or difficulty (including a significant interference with the safe or efficient operation of the workplace or violation of a bona fide seniority system)."  Id.

As "the NYCHRL [is] construed more liberally than state . . . law and broadly in favor of discrimination plaintiffs," Algarin v. NYC Health + Hosp. Corp., 678 F. Supp. 3d 497, 513 (S.D.N.Y. 2023) (citations & quotations omitted), aff'd, No. 23 Civ. 1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024),[4] if a plaintiff states a claim pursuant to the NYSHRL, the plaintiff also states a claim pursuant to the NYCHRL.  In order to state a claim pursuant to the NYSHRL for religious discrimination for failure to accommodate, a plaintiff must plead "that (1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employer of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement."  Salamoon v. Richmond Univ. Med. Ctr., 211 N.Y.S.3d 748, 755 (Sup. Ct. Richmond Cnty. 2024) (quoting Knight v. Conn. Dep't of Pub. Health, 275 F.3d 156, 167 (2d Cir. 2001), and citing Baker v. Home Depot, 445 F.3d 541, 546 (2d Cir. 2006)).

If the plaintiff sufficiently pleads the foregoing elements, the next step in the analysis is determination of whether "a requested accommodation would pose an undue burden on an employer," which "is an affirmative defense."  Chinchilla v. N.Y. City Police Dep't, No. 23 Civ. 8986 (DEH), 2024 WL 3400526, at *10 (S.D.N.Y. July 12, 2024) (citing the NYSHRL and the

---

[4] The Court notes that "[t]he New York State Legislature passed several amendments to the NYSHRL in June 2019, the effect of which is to render the standard for claims closer to the standard of the NYCHRL."  Livingston v City of New York, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021) (citation omitted).

NYCHRL). Because "[t]he pleading requirements in the Federal Rules of Civil Procedure . . do not compel a litigant to anticipate potential affirmative defenses, . . . and to affirmatively plead facts in avoidance of such defenses," and as "a motion to dismiss based on an affirmative defense is permissible where the facts necessary to establish the defense are evident on the face of the complaint," dismissal of a complaint based on undue hardship is only permissible where the facts establishing the defense are evident on the fact of the complaint. Id. (citations & quotations omitted); see, e.g., Salamoon, 211 N.Y.S.3d at 760 (reasoning that "Plaintiff's NYSHRL claim cannot succeed under the facts alleged in the complaint," as "[t]he only means by which Defendant could provide the religious accommodation requested by Plaintiff would require the violation of a binding state regulation, which would cause Defendant to suffer an undue hardship as a matter of law").

The Court respectfully recommends that Defendant's motion as to NYSHRL and NYCHRL claims for failure to accommodate be denied. Plaintiff sufficiently pleaded each element of the claims. First, Plaintiff pleaded that he held a bona fide religious belief conflicting with an employment requirement, namely that he is "Roman Catholic" and has "strong opposition to the use of stem cells and abortion-related products in the development and production of COVID-19 vaccines," which conflicted with the Vaccination Mandate. ECF No. 11 ¶¶ 45, 48. Second, Plaintiff pleaded that he informed his employer of this belief, in submitting his religious accommodation request on November 5, 2021. See id. ¶ 44. Third, Plaintiff pleaded that he was disciplined for failure to comply with the conflicting employment requirement, namely the Vaccination Mandate, when his employment was terminated for such failure on February 11, 2022. See id. ¶¶ 127-28.

14

Once Plaintiff has pleaded his claims, and the possible affirmative defenses are not evident on the face of the amended complaint, the claims may move forward. Defendant may, indeed, have valid defenses, but they require the presentation of facts beyond the amended complaint. For example, Plaintiff bases his claims on a claim that aborted fetal cell lines were used in the production, research, manufacture and/or testing of the COVID-19 vaccine. This is posited as a fact, not a religious belief in and of itself such that Plaintiff will have to prove such alleged fact at a later stage of the proceedings. This allegation cannot be resolved on the current record. By way of another factual dispute that cannot be resolved on the face of the amended complaint or as a matter of law is the defense of undue hardship. At this juncture, determination of whether accommodating Plaintiff would have been an undue hardship for Defendant would be premature. On the other hand, Plaintiff alleged that Defendant "promulgated a written policy regarding the implementation of the Vaccine Mandate and the reasonable accommodation process," which provided that "[a] sincerely held religious, moral, or ethical belief may be a basis for a religious accommodation" and "that the alternative to vaccination[,] which would not cause an undue hardship if an employee is granted a reasonable accommodation[,] would be submission of a weekly negative test result." Id. ¶¶ 36-38 (quotations omitted). Plaintiff also pleaded that Defendant granted approximately 105 religious and medical accommodations to other employees of the FDNY, including "active-duty firefighters," as of January 11, 2022, including at least thirty medical accommodations and at least six religious accommodations, and permitted them "to submit to weekly PCR testing" in lieu of receiving the COVID-19 vaccine. Id. ¶¶ 130-131, 135, 140-41. Plaintiff argues that providing this accommodation to him would not have been not an undue hardship, particularly given that only the initial dose was required, that "[t]he COVID-19 vaccine does not cause prevention or [sic] transmission of the COVID-19

15

virus," and that "vaccinated and unvaccinated people infected with COVID-19" had "similar viral loads." Id. ¶¶ 129, 158-61.  Plaintiff further pleaded that Defendant "had mutual aid agreements with outside municipalities that did not have vaccination requirements and/or provided first responders to work unvaccinated with reasonable accommodation" and "also had volunteer Fire Departments who were not subject to the Vaccine Mandate or any vaccination requirement," such that "[t]he volunteer firefighters and personnel were permitted to work unvaccinated." Id. ¶¶ 34-35.  The amended complaint lacks information as to Plaintiff's responsibilities, skills and schedules, or Defendant's staffing needs, such that the Court cannot determine now whether Plaintiff was entitled to a reasonable accommodation or whether any accommodation was available.  In view of the foregoing, the Court cannot conclude on the face of the amended complaint that granting Plaintiff's religious accommodation request would have caused Defendant an undue hardship.

Accordingly, the Court respectfully recommends that Defendant's motion to dismiss the NYSHRL and NYCHRL claims for failure to accommodate be denied.

### C.   NYCHRL Claim For Failure To Engage In A Cooperative Dialogue

For the reasons discussed below, the Court respectfully recommends that Defendant's motion as to the NYCHRL claim for failure to engage in a cooperative dialogue be denied.

The NYCHRL provides that

> [i]t shall be an unlawful discriminatory practice for an employer, labor organization or employment agency or an employee or agent thereof to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity has notice may require such an accommodation

for, inter alia, "religious needs."  N.Y.C. Admin. Code § 8-107(28)(a).  A "cooperative dialogue" is defined as "the process by which a covered entity and a person entitled to an accommodation,

16

or who may be entitled to an accommodation under the law, engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity." N.Y.C. Admin. Code § 8-102. Determining "that no reasonable accommodation would enable the person requesting an accommodation to satisfy the essential requisites of a job or enjoy the right or rights in question may only be made after the parties have engaged, or the covered entity has attempted to engage, in a cooperative dialogue." N.Y.C. Admin. Code § 8-107(28)(e).

Defendant's process for deciding whether to grant accommodations to the Vaccination Mandate for its employees generally has been held to satisfy the "cooperative dialogue" requirement. See Goolsby v. City of New York, 229 N.Y.S.3d 131, 132 (1st Dep't 2025) (reasoning that "[t]he motion court properly dismissed plaintiff's claim for failure to engage in a cooperative dialogue under the New York City Human Rights Law," where the "[p]laintiff took full advantage of this process, requesting exemptions on multiple grounds, purs[u]ing an appeal from the denial of this request, and submitting additional documentation raising additional grounds for an exemption after determination of this appeal, all of which was considered by defendant," as "[t]his Court has held that defendant's process for reviewing accommodation requests related to the Covid-19 vaccination mandate was sufficient to satisfy the NYCHRL's cooperative dialogue requirement" (citations omitted)); Marsteller v. City of New York, 192 N.Y.S.3d 18, 20 (1st Dep't 2023) (reasoning that "the City publicly offered public information on its process for reviewing accommodation requests related to the vaccine mandate" and that the "[p]etitioner availed himself of this process, the NYPD explained why his application did not

17

qualify for an accommodation, and the parties further engaged during the administrative appeals process," with the City having to resolve thousands of requests for religious accommodations "under a constrained timeline during an evolving public health emergency"), mot. for leave to appeal denied, 208 N.Y.S.3d 529 (2024).

Plaintiff here makes a different claim as to the dialogue requirement. He alleged that he received a "boilerplate" denial of his request from the FDNY that was received by "all FDNY employees who were denied religious accommodations," ECF No. 11 ¶ 50; that Defendant did not inquire into the sincerity of Plaintiff's religious beliefs and instead "appl[ied] a blanket standard that presumed such beliefs to be insincere or invalid based on the City's view of the connection between the vaccine and abortion" id. ¶ 86; and that Defendant presumed that applicants used other products that Defendant "deemed to have been developed or tested in similar ways," including "independent, post-production testing," "without even asking the applicant about any other products," id. ¶¶ 96-97, 101. In view of these allegations, although the prescribed process for deciding reasonable accommodation requests may have complied with the NYCHRL's cooperative-dialogue requirement, Plaintiff has alleged that, in his case, Defendant did not comply with that process.

Accordingly, the Court respectfully recommends that Defendant's motion as to the NYCHRL claim for failure to engage in a cooperative dialogue be denied.

## III.    CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Defendant's motion to dismiss be denied in its entirety.

**IV.   OBJECTIONS**

Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen days of service.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen-day period for filing objections. Failure to file objections within fourteen days will preclude further review of this report and recommendation by both the District Court and the Court of Appeals.  See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022) (reasoning that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a magistrate [judge]'s recommended decision, it waives any right to further review of that decision" (citation & quotations omitted)).

Dated: Brooklyn, New York
       February 2, 2026

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge

19